Robert STITES, Appellant,

v.

Karen GILLUM, Appellee.

No. 2–92–262–CV.

Court of Appeals of Texas, Fort Worth.

Feb. 23, 1994.

Rehearing Overruled April 28, 1994.

Anne Gardner, Shannon, Gracey, Ratliff, & Miller, L.L.P., Fort Worth, for appellant.

Richard N. Countiss, Burrow, Countiss, Barrie, & Ray, L.L.P., Houston, for appellee.

Before DAY, HICKS and FARRAR, JJ.

## OPINION

HICKS, Justice.

Appellant, Robert Stites, appeals from a sanctions order imposed against him under Texas Rule of Civil Procedure 13. We affirm.

Stites represented Ellen Kirkham in a divorce suit filed against her by her husband, William Kirkham. Stites included Karen Gil-

lum as a respondent in Ellen Kirkham's counter-petition for divorce, entitled "Suit Against Third Party Counter–Respondent for Impairment and Interference with Familial Relationship." This counter-petition alleged that Gillum had set a course of conduct for the purposes of persuading William Kirkham to leave his wife, and to interfere with the family relationship and destroy Ellen and William's marriage.

Gillum moved for summary judgment, alleging that Ellen Kirkham's asserted cause of action against her was either an action for criminal conversation or for alienation of affections, and that both causes of action had been abolished in Texas. *See* TEX.FAM. CODE ANN. secs. 4.05, 4.06 (Vernon 1993). The court granted the summary judgment motion.

Gillum then filed a motion for sanctions against Stites, pursuant to TEX.R.CIV.P. 13. The court severed the motion for sanctions from the divorce proceedings, and after a hearing the court imposed $18,000 in sanctions against Stites.

Stites combines his argument regarding points one through seven, in which he contends the trial court abused its discretion in imposing sanctions under Rule 13 based on its findings that the action Stites filed on behalf of Ellen Kirkham against Gillum was groundless and in bad faith.

### TEXAS RULE OF CIVIL PROCEDURE 13:

This Rule provides, in pertinent part:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion, or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.

. . . .

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law.

TEX.R.CIV.P. 13.

The parties agree that this Court should review Rule 13 sanctions by an abuse of discretion standard. *See Home Owners Funding Corp. v. Scheppler*, 815 S.W.2d 884, 887–89 (Tex.App.—Corpus Christi 1991, no writ); *Zarsky v. Zurich Management, Inc.*, 829 S.W.2d 398, 399 (Tex.App.—Houston [14th Dist.] 1992, no writ). *See also GTE Communications v. Tanner*, 856 S.W.2d 725, 730–32 (Tex.1993) (orig. proceeding) (applying abuse of discretion test to review of sanctions imposed under Rule 13).

■■■ The test for determining whether the trial court abused its discretion is whether it acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). If the trial court acts in an arbitrary or unreasonable manner, it abuses its discretion. *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex.1989). In reviewing abuse of discretion regarding imposition of Rule 13 sanctions, a trial court's ruling should be overturned only when it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Home Owners*, 815 S.W.2d at 889. *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359, 381–82 (1990) (discussing abuse of discretion test as applied to sanctions imposed pursuant to FED.R.CIV.P. 11[1]), and *Chambers v. Nasco, Inc.*, 501 U.S. 32, ——, 111 S.Ct. 2123, 2139, 115 L.Ed.2d 27, 52 (1991) (abuse of discretion test is applied to

1. Federal Rule of Civil Procedure 11 provides, in pertinent part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

sanctions imposed under a court's inherent power).

In *Home Owners,* the court stated:

> The purpose of Rule 13 is to check abuses in the pleading process, i.e. to insure that at the time the challenged pleading was filed the litigant's position was factually well grounded and legally tenable.

*Home Owners,* 815 S.W.2d at 889.

### PLEADINGS FILED BY STITES:

Stites asserts that when he filed Ellen Kirkham's counter-petition against Gillum, he was modifying or extending existing law on the causes of action "Interference with Familial Relationship" and "Intentional Infliction of Emotional Distress." Thus, we will compare his pleadings to these two causes of action and to "Alienation of Affections." Because it is important that we review the exact language used by Stites in the counter-petition, we have set out the entire counter-petition:

> 14. *Suit Against Third Party Counter–Respondent for Impairment and Interference with Familial Relationship*
>
> ELLEN LOUISE KIRKHAM, Counter–Petitioner, herein makes this claim against Dr. KAREN GILLUM, Third Party Respondent, for impairment and breach of the familial relationship and for cause thereof would show unto the Court as follows:
>
> [Paragraph A pertains to service on Gillum.]

#### B.

> Counter–Petitioner would show that she and her husband, WILLIAM O. KIRKHAM, were married by common law on or about October 1, 1981, and lived together happily as husband and wife until on or about December 20, 1989. Thereafter, the parties reconciled and lived together from approximately January 23, 1989 [sic 1990?], until July 11, 1989 [sic 1990?], when Dr. KAREN GILLUM again induced WILLIAM O. KIRKHAM to return to reside and live with her.
>
> The parties were happily married until Third Party Respondent DR. KAREN GILLUM set a course of conduct for the purpose of persuading WILLIAM O. KIRKHAM to leave his wife and to establish a possibly sexual relationship with DR. GILLUM. DR. KAREN GILLUM did this for the purpose of interfering with the family relationship and to destroy the marriage of ELLEN KIRKHAM and WILLIAM O. KIRKHAM. DR. KAREN GILLUM has in fact told Counter–Petitioner that "I'll be waiting for your husband when it's over between the two of you."

#### C.

> As a result of DR. GILLUM's conduct as aforesaid, the parties are now seeking divorce. The marriage has been ruined, and Counter–Petitioner's life has been interrupted and destroyed.

#### D.

> Counter–Petitioner, ELLEN O. KIRKHAM, would show that by the conduct of the Third Party Respondent, DR. KAREN GILLUM, the relationship between her and her husband has been impaired, and that KAREN GILLUM has brought shame, embarrassment, and humiliation and great grief upon her.

#### E.

> ELLEN KIRKHAM further alleges that in committing the above-described acts, DR. KAREN GILLUM acted with malice which resulted in the impairment of the marriage relationship between ELLEN KIRKHAM and WILLIAM O. KIRKHAM. Punitive damages accordingly should be rendered against her in an amount to prevent such further acts on her behalf in the future and to set an example in the community as against these malicious, intentional, wanton, willful acts.
>
> [The Prayer is omitted.]

### TRIAL COURT'S FINDINGS:

After a hearing on Gillum's motion for sanctions, the trial court made the following findings:

4) The Court finds that the action filed by Robert T. Stites was an action for "alienation of affections" couched in other terms.

. . . .

6) The Court finds that the action filed by Robert T. Stites was not an action seeking damages for intentional infliction of emotional distress.

. . . .

14) The Court finds, . . . that Robert T. Stites brought the action in bad faith, without first considering the prohibition contained in Section 4.06 of the Texas Family Code.

15) This Court specifically finds that the action filed by Robert T. Stites was a groundless lawsuit which held no basis in law or fact and was not warranted by a good faith argument for the extension, modification or reversal of existing law.

. . . .

16) [sic] The Court finds that for good cause sanctions shall assess against Robert T. Stites individually and in his capacity as attorney of record pursuant to Rule 13 and Rule 215b of the Texas Rules of Civil Procedure.

### STITES'S CONTENTIONS:

Stites's argument on appeal is that the counter-petition he filed on behalf of Ellen Kirkham does not allege alienation of affections, which is prohibited by Family Code section 4.06, but in fact alleges two other existing causes of action: interference with familial relationship; and intentional infliction of emotional distress. He insists that when he filed the counter-petition, existing legal authority in Texas did suggest the availability of either cause of action.

Accordingly, Stites asserts the trial court abused its discretion in awarding Rule 13 sanctions because the question of whether Family Code sections 4.05 and 4.06 preclude assertion of claims for interference with familial relations, or for intentional infliction of emotional distress, was one of first impression in Texas when the counter-petition was filed in January 1990.

Our initial task is to review the elements of the three causes of action, and to compare these elements to the allegations in the counter-petition.

### ALIENATION OF AFFECTIONS:

Effective September 1, 1987, the Legislature amended the Texas Family Code to abolish the right of action by one spouse against a third party to alienation of affections. TEX.FAM.CODE ANN. sec. 4.06 (Vernon 1993)[2]. Prior to that date, alienation of affections had been defined as follows:

The gist of the alienation of affections action is *the intentional or purposeful alienation of the affections of one spouse from the other; the damage,* if any, in such a case *is for loss of consortium;* to establish a cause of action it is not necessary that there be a loss of all elements included in that term, but that any substantial impairment thereof, through unjustified intentional conduct, creates a cause of action in favor of the spouse damaged against the offender in this respect.

*Williams v. Rearick,* 218 S.W.2d 225, 229 (Tex.Civ.App.—Amarillo 1949, no writ) (emphasis supplied).

Consortium in the context of an action for alienation of affections has been held to include the right to the affection, society, comfort, and assistance of the spouse. *Whitley v. Whitley,* 436 S.W.2d 607, 609 (Tex.Civ. App.—Houston [14th Dist.] 1968, no writ). "The loss of these elements occasioning mental pain and anguish, are of a mental and emotional nature, and therefore are embraced within the term 'injury done to the person of another.' This term has been held to include actions for mental suffering or 'mental anguish, disappointment, sorrow and affliction.' " *Id.*

The Texas Supreme Court subsequently discussed the definition of "loss of consortium" in *Whittlesey v. Miller,* 572 S.W.2d 665 (Tex.1978). The Court defined loss of consortium as including "the mutual right of the husband and wife to that affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful

**2.** Act of May 25, 1987, 70th Leg., R.S., ch. 453, sec. 1, 1987 Tex.Gen.Laws 2030, 2030.

marriage. [Citations omitted.] This definition primarily consists of the emotional or intangible elements of the marital relationship." *Id.* at 666. The *Whittlesey* Court stated that "The intentional impairment of consortium can result in actions for either alienation of affections or criminal conversation. [Court's footnote recognized that this latter cause of action had been abolished.]" *Id.* The Court further noted that the cause of action for alienation of affections had been recognized by prior Texas decisions, citing *Kelsey–Seybold Clinic v. Maclay*, 466 S.W.2d 716 (Tex.1971), and *Whitley*, 436 S.W.2d 607.[3]

### INTERFERENCE WITH FAMILIAL RELATIONSHIP:

Stites does not tell us the elements of this cause of action. He contends that as a basis for his assertion of a cause of action for interference with familial relationship, he properly relied upon the case of *Salinas v. Fort Worth Cab & Baggage Co.*, 725 S.W.2d 701 (Tex.1987).

In *Salinas*, a wife was raped and sodomized by a taxi driver. She sued the taxi company for negligent hiring practices. She sought and recovered, *inter alia*, for damages sustained as a result of her husband's inability to cope with the attack on his wife. *Id.* at 702–03. The jury was permitted to consider as actual damages "[t]he impairment of her relationship with her husband and the loss of love, society, affection and companionship with him." *Id.* at 703 n. 1.

Stites maintains that *Salinas* "was representative of a trend in Texas law" at the time of the filing of the pleadings by him.

We first observe that the cause of action in *Salinas*, and in fact the Texas Supreme Court's opinion, occurred prior to the effective date of Family Code section 4.06 which abolished the cause of action for alienation of affections. Secondly, as defined earlier, a cause of action for alienation of affections is a *cause of action* for the *intentional or purposeful* alienation of affections of a spouse. The *Salinas* plaintiff did not allege a cause of

action for intentional or purposeful interference with familial relationship; the recovery was sought as a proper element of damages in a negligence cause of action. *Id.* at 703. Therefore, we do not view *Salinas* as supportive of Stites's argument that a cause of action for interference with familial relationship existed when he filed the pleadings in the instant case.

Stites also relies upon two other cases, *Reagan v. Vaughn*, 804 S.W.2d 463 (Tex. 1990); and *Weirich v. Weirich*, 796 S.W.2d 513, 516 (Tex.App.—San Antonio 1990), *rev'd on other grounds*, 833 S.W.2d 942 (Tex.1992).

Stites directs our attention to the Texas Supreme Court's reaffirmation of its prior statement that "injuries to the familial relationship are significant injuries and are worthy of compensation." *Reagan*, 804 S.W.2d at 464 (quoting *Sanchez v. Schindler*, 651 S.W.2d 249, 252 (Tex.1983)). In *Reagan*, the Texas Supreme Court for the first time addressed the issue of "whether a child has a right to recover damages for loss of consortium and mental anguish when a parent is injured but not killed by the tortious conduct of a third party." *Reagan*, 804 S.W.2d at 464.

*Reagan* dealt with the availability of damages sought by a *child* in a negligence cause of action, rather than the availability of a separate cause of action by a *spouse* for interference with the familial relationship. *Sanchez* established that a parent has the right to recover damages in a wrongful death action for the loss of the companionship and society resulting from the death of a child. *Sanchez*, 651 S.W.2d at 254.

We find *Reagan* and *Sanchez* distinguishable on their facts from the cause of action alleged by Stites, and we do not find these cases lend support to Stites's argument that there existed a cause of action by a spouse against a third party for interference with the familial relationship *of the husband and wife*.

---

**3.** The Court in *Whittlesey* additionally opined that "The phrase 'loss of consortium' is more accurately described as an element of damage rather than a cause of action. But courts have so frequently used the phrase to denote those actions in which loss of consortium is the major element of damage that 'loss of consortium' has come to be referred to as a cause of action." *Whittlesey*, 572 S.W.2d at 666 n. 1.

Lastly, Stites cites *Weirich v. Weirich*, 796 S.W.2d 513. In *Weirich*, a mother alleged that her childrens' paternal grandmother negligently interfered with the family relationship by assisting the father in abducting the children. 796 S.W.2d at 515. The appellate court held that there did not exist in Texas a cause of action for negligent interference with family relationship. *Id.* at 516. The court stated that intentional interference with the relationship of the parent and child is actionable, citing RESTATEMENT (SECOND) OF TORTS sec. 700 (1977). *Id.*

The Texas Supreme Court disposed of the case on statutory grounds, and stated it expressed no opinion on the correctness of the court of appeals' writing on negligent infliction of emotional distress. *Weirich*, 833 S.W.2d at 943. Stites refers us to language in Justice Doggett's concurring opinion that "[t]his court has neither expressly acknowledged nor rejected an independent action for negligent interference with family relationship." *Id.* at 948, (Doggett, J., concurring). Stites additionally quotes the following footnote in the concurring opinion:

> [Fn] The recent trend towards recognizing causes of action for interference with the family relationship was referenced to the legislature in its deliberations regarding chapter thirty-six in the testimony of University of Texas School of Law Professor Jack Sampson. Debate on Tex.H.B. 544, 68th Leg., R.S. (March 23, 1983) (recording available from the Texas House of Representatives).

*Id.* at 948 n. 4 (Doggett, J., concurring).

*Weirich* dealt with an alleged cause of action by a spouse against a third party for *interference with child custody*, as contrasted with the counter-petition filed in the case at bar which alleged a cause of action by a spouse against a third party for intentional or purposeful interference with the familial relationship *of the two spouses.* Accordingly, we find the facts of *Weirich* distinguishable from those before us, and we do not find the case supports Stites's argument that there existed a cause of action by a spouse against a third party for interference with the familial relationship of the husband and wife.

We hold that at the time Stites filed the counter-petition,[4] there was no viable cause of action for interference with familial relationship as applied to the factual situation of this case, and that the pleadings filed by him were not seeking a good faith extension of existing law.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:

In *Twyman v. Twyman*, 855 S.W.2d 619, 620–22 (Tex.1993), the Texas Supreme Court expressly adopted the tort of intentional infliction of emotional distress as set out in section 46(1) of the RESTATEMENT (SECOND) OF TORTS (1965). The Restatement elements of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman*, 855 S.W.2d at 621.

The supreme court acknowledged that "[w]hile this court has never expressly recognized the tort of intentional infliction of emotional distress, we found no reversible error in the court of appeals' opinion in *Tidelands Automobile Club v. Walters*, which did so. 699 S.W.2d 939 (Tex.App.—Beaumont 1985,

---

4. As recognized by Stites in his brief, after the pertinent events in this case transpired, this Court decided *Transportation Ins. Co. v. Archer*, 832 S.W.2d 403 (Tex.App.—Fort Worth 1992, writ denied). In *Archer*, a husband and wife sued an insurance company for claims arising out of the company's handling of the husband's workers' compensation claim. *Id.* at 404. The plaintiffs pleaded various causes of action, and alleged the company's intentional actions caused them to sustain familial interference. *Id.* at 405. This Court reversed the jury's award of damages to the wife, reasoning that:

> Donna's pleading familial interference and obtaining damages for interference with family relationships is not the same as pleading and proving loss of consortium, *because a recovery for mere interference with family relationships is not recognized in our law.*

*Id.* (emphasis supplied).

We agree with Stites that *Archer* has no bearing on whether a good faith argument for such a cause of action could have been made in 1990, when the pleadings were filed by Stites.

writ ref'd n.r.e.)." *Twyman,* 855 S.W.2d at 621.[5] In *Tidelands,* the court adopted the elements of the tort as expressed in section 46 of the Restatement. *Tidelands,* 699 S.W.2d at 942–44.

It is important to note that in neither *Twyman* nor *Tidelands* was this cause of action asserted by a spouse against a third party for infliction of emotional distress resulting from conduct involving the third party and the other spouse. In *Twyman,* a wife was permitted to bring this cause of action *against her husband* in a divorce suit. *Twyman,* 855 S.W.2d at 620. In *Tidelands,* a husband brought this cause of action against a third party insurer as a result of *nonpayment of proceeds* from his deceased wife's life insurance policy. *Tidelands,* 699 S.W.2d at 940.

Nevertheless, at the time Stites filed the counter-petition in the instant case, there existed intermediate appellate court opinions adopting in Texas the tort of intentional infliction of emotional distress in various fact situations. It is perhaps conceivable that, notwithstanding the prohibition of section 4.06 of the Family Code abolishing the cause of action of alienation of affections by one spouse against a third party, an argument could be made that the cause of action of intentional infliction of emotional distress was viable and should be extended to a situation involving a spouse bringing the cause of action against a third party for conduct involving the other spouse.[6] However, when we analyze Stites's rather brief allegations in his counter-petition, it becomes evident that the pleadings never assert Gillum's conduct

was "extreme and outrageous," one of the requirements of this cause of action. In *Twyman,* the supreme court stated:

> According to the Restatement, liability for outrageous conduct should be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Twyman,* 855 S.W.2d at 621 (quoting RESTATEMENT (SECOND) OF TORTS sec. 46 comment d (1965)).

 A pleading should contain "a short statement of the cause of action sufficient to give fair notice of the claim involved." TEX. R.CIV.P. 47(a). In the absence of special exceptions, the petition should be construed liberally in favor of the pleader. *Roark v. Allen,* 633 S.W.2d 804, 809 (Tex.1982). A court should uphold the petition as to a cause of action that may be reasonably inferred from what is specifically stated, even if an element of the cause of action is not specifically alleged. *See id.; Gulf, Colo. & S.F. Ry. v. Bliss,* 368 S.W.2d 594, 599 (Tex.1963).

The pertinent section of the counter-petition was entitled "Suit Against Third Party Counter–Respondent for Impairment and Interference with Familial Relationship." As quoted in full earlier in our opinion, the pleading alleged that Stites's client and her husband were happily married until Gillum "induced WILLIAM O. KIRKHAM to return to reside and live with her," and that Gillum

---

5. *See also Bushell v. Dean,* 781 S.W.2d 652, 658 (Tex.App.—Austin 1989), *rev'd on other grounds,* 803 S.W.2d 711 (Tex.1991) (per curiam opinion on reh'g); *Service Lloyds Ins. Co. v. Greenhalgh,* 771 S.W.2d 688, 692 (Tex.App.—Austin 1989), *rev'd on other grounds,* 787 S.W.2d 938 (Tex. 1990).

6. Stites recognizes that in 1992 this Court had occasion to address a fact situation in which a third party was sued for intentional, or alternatively, negligent infliction of mental anguish as the result of engaging in an adulterous affair with the plaintiff's husband. *See Truitt v. Carnley,* 836 S.W.2d 786 (Tex.App.—Fort Worth 1992, writ denied).

We affirmed the granting of the summary judgment against the plaintiff on the basis that the suit was necessarily based upon either or both of the causes of action of criminal conversation or alienation of affections, both of which had been abolished by sections 4.05 and 4.06 of the Family Code. *Id.* at 787.

We agree with Stites that *Truitt* has no bearing on whether a good faith argument for a cause of action for intentional infliction of emotional distress could have been made in 1990, when the pleadings were filed by Stites.

Furthermore, in light of our subsequent holding in the instant case that Stites did not allege the cause of action of intentional infliction of emotional distress, we expressly do not decide the viability of such a cause of action in circumstances such as those in the case before us.

"set a course of conduct for the purpose of persuading WILLIAM O. KIRKHAM to leave his wife and to establish a possibly sexual relationship" with Gillum, and that Gillum "did this for the purpose of interfering with the family relationship and to destroy the marriage."

There is absolutely no allegation in the counter-petition that Gillum's conduct was "extreme and outrageous," and we do not find that it may be reasonably inferred from the facts stated in the counter-petition that Stites intended to plead a cause of action for intentional infliction of emotional distress.

Nonetheless, in our determination regarding whether Stites alleged a cause of action against Gillum for intentional infliction of emotional distress, we have additionally reviewed Gillum's motion for summary judgment against Ellen Kirkham, and Stites's response thereto. Gillum's motion contended summary judgment was proper because Ellen Kirkham's suit for impairment and interference with familial relationship was actually a suit for criminal conversation or alienation of affection, and that both causes of action are barred by sections 4.05 and 4.06 of the Texas Family Code.

Stites filed a response to the motion for summary judgment on behalf of Ellen Kirkham. In this response, Stites relies upon only one legal authority, *Salinas v. Fort Worth Cab & Baggage Co.*, 725 S.W.2d 701 (Tex.1987), which has been discussed earlier in this opinion regarding the cause of action of impairment of familial relationship. Stites asserted summary judgment was improper because "the Supreme Court of Texas in [*Salinas* ] specifically recognized *impairment of the familial relationship* and a tort claim against the third party that in fact impairs the familial relationship." [Emphasis supplied.] The summary judgment response continues by stating that "this case has been discussed in several recent advanced family law seminars implying and indicating that there is a cause of action in Texas for the loss or *impairment of familial relationship* caused by a third-party tort-feasor. That *this particular underlying claim* against DR. KAREN GILLUM *is such a case* as that." [Emphasis supplied.]

■ After careful analysis, we hold that the recitations in the counter-petition, when analyzed together with the summary judgment response filed by Stites on behalf of Gillum, purport to allege only a cause of action for interference with familial relationship, and do not allege a cause of action for intentional infliction of emotional distress. Accordingly, we agree with the trial court's finding that the action filed by Stites was not an action seeking damages for intentional infliction of emotional distress.

We overrule points of error one through seven. **IN SUMMARY,** we hold the trial court did not abuse its discretion in finding that the research relied upon by Stites did not support the existence or creation of a cause of action for interference with familial relations. We find there was legally and factually sufficient evidence in support of the trial court's finding that the action filed by Stites was groundless because: it had no basis in law or fact and was not warranted by good faith argument for the extension, modification, or reversal of existing law; and it was an action for alienation of affections couched in other terms. We hold the trial court did not abuse its discretion in finding that the action filed by Stites was not an action seeking damages for intentional infliction of emotional distress. Because of these holdings, we find the trial court did not abuse its discretion in determining the action to be groundless. We additionally hold the trial court did not abuse its discretion in finding that "good cause" existed to impose sanctions against Stites under TEX.R.CIV.P. 13.

### BAD FAITH:

In points of error eight and nine, Stites contends the trial court abused its discretion in finding that Stites failed to consider the prohibition of section 4.06 of the Family Code, and in finding that the action against Gillum was filed by Stites in "bad faith."

Rule 13 does not define "bad faith," and neither party cites us to a Rule 13 sanctions case interpreting the phrase. Stites maintains the applicable definition requires a showing that the claim was motivated by ill will or a discriminatory purpose, citing *Knebel v. Port Enterprises, Inc.*, 760 S.W.2d 829,

831 (Tex.App.—Corpus Christi 1988, writ denied). *Knebel* involved a claim of bad faith under a provision of the D.T.P.A., which mandates an award of attorney's fees if the court finds an action is "groundless and brought in bad faith." TEX.BUS. & COM. CODE ANN. sec. 17.50(c) (Vernon 1987).

As this Court held in another D.T.P.A. case:

> "Bad faith" [1] should be given its ordinary meaning when used in the context of a DTPA case. *Smith v. Smith*, 757 S.W.2d 422, 427 (Tex.App.—Dallas 1988, writ denied). The DTPA itself offers no definition, hence, we must accept that the legislature intended that the term be used in its ordinary sense. *Id.* To prove "bad faith," the appellee must have shown that the claim by Elbaor was motivated by a malicious or discriminatory purpose. *Central Texas Hardware v. First City*, 810 S.W.2d 234, 237 (Tex.App.—Houston [14th Dist.] 1991, n.w.h.).
>
> _____
>
> [1] The term "bad faith" is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity. *See* BLACK'S LAW DICTIONARY 127 (5th ed.1979).

*Elbaor v. Sanderson*, 817 S.W.2d 826, 829 (Tex.App.—Fort Worth 1991, no writ).

Stites testified at the sanctions hearing that he has been licensed for fifteen years, and received his Board Certification in Family Law from the Texas Board of Legal Specialization in 1984. Seventy-five percent of his practice involves contested family law. Stites admitted that on two occasions prior to filing the counter-petition in the instant case, he had filed two other lawsuits in Tarrant County courts in which he had asserted the claim of interference and impairment with familial relations. Stites conceded that both of these lawsuits were eventually unsuccessful and were dismissed by the trial court; however, the record before us is unclear regarding the dates of the dismissals of these lawsuits.

Stites acknowledged that during Stites's prior deposition Gillum's counsel asked him "Could the factual allegations made against Dr. Gillum be classified under alienation of affections?" and Stites had answered "I don't

know." Whereupon counsel had asked "Why don't you know?" and Stites had responded "I never considered it." At trial, Stites attempted to explain this statement by saying he had in fact considered several other legal authorities when he filed the counter-petition.

Joseph McKnight testified as an expert in the field of family law. Professor McKnight has been on the faculty of Southern Methodist University School of Law since 1955, and actively studies and researches family law issues. He stated he had reviewed the pleadings in the case at bar and the depositions of Robert Stites and Ellen Kirkham, and had listened to the testimony that Stites gave at the sanctions hearing. At the hearing, Professor McKnight analyzed the legal authorities which Stites testified he relied upon in filing the counter-petition, and McKnight found that none of these authorities supported a viable cause of action in Texas. Professor McKnight opined that he would characterize the allegations against Gillum as a suit for alienation of affections, which would fall under section 4.06 of the Family Code. He testified that in his expert opinion, the cause of action filed by Stites is groundless in light of section 4.06 of the Family Code, and he was not aware of any case in Texas which supports a cause of action such as that alleged in the counter-petition, and there is not any basis in law for such a suit.

Toby Goodman testified on behalf of Stites. Goodman is an attorney in Tarrant County, and his practice consists of approximately seventy percent contested family law litigation. Goodman reviewed basically all the material discussed by Professor McKnight. When Goodman was asked by Stites whether there is a cause of action that Ellen Kirkham has against Gillum insofar as the material which Goodman reviewed, he replied:

> *I'm not sure there's a cause of action.* I think there's an argument to be made that there is a good faith extension of existing law, that Ms. Kirkham would have had a cause of action based on her affidavit had it possibly been pled a little differently than it was pled, although I do believe that it is contained within your pleadings con-

cerning the intentional infliction of emotional distress. [Emphasis supplied.]

Soon thereafter, Goodman was asked by Stites whether the affidavits set forth a cause of action against Gillum, and he responded:

*I'm not sure it sets forth a cause of action* but I think it sets forth the basis of a cause of action. And I, like Dr. McKnight, have not seen that specifically pled, but believe that if someone makes certain types of statements to a third party, that could give rise to the basis of a cause of action. [Emphasis supplied.]

Goodman concluded his testimony with his opinion that when the Legislature (of which he is a freshman member) enacted sections 4.05 and 4.06 of the Family Code, it did not intend to abolish all causes of action concerning intentional conduct of a third party directed to a spouse. He conceded, however, that he had not been a member of the Legislature at the time sections 4.05 and 4.06 were enacted. Goodman stated the Family Code sections speak for themselves and are a public policy statement of the State of Texas that there should *not* be a viable cause of action for "alienation of affections where you have a person enticing a spouse out of a marriage relationship."

■ We find that the trial court, after reviewing the pleadings and the summary judgment which had been granted in Gillum's favor, and after hearing the testimony of Stites as well as the testimony of the experts and weighing the credibility of the witnesses, could reasonably have concluded that Stites brought the action in bad faith, without first considering the prohibition contained in Section 4.06 of the Texas Family Code. Therefore, the trial court did not abuse its discretion in entering the complained-of findings. Points of error eight and nine are overruled.

### SANCTIONS AWARD:

In point of error ten, Stites challenges the trial court's $18,000 sanctions award to Gillum as grossly excessive and manifestly unjust in light of the evidence, or alternatively, argues the trial court erred in failing to award a substantial remittitur.

Pursuant to Rule 13, the trial court is authorized to impose the sanctions available under TEX.R.CIV.P. 215(2)(b). Those sanctions include coercive orders, contempt orders, monetary awards for expenses and attorney's fees, and such other orders as are just. *Id.*

Gillum testified she had incurred $21,-451.81 in attorney's fees up to the time of the sanctions hearing. Additionally, she is a physician and was required to be absent from her medical practice for over two weeks, and she had suffered great embarrassment because of the lawsuit.

Some of the findings of the trial court were recited earlier in this opinion; others on this issue include the following:

16) The Court finds that the action brought by Robert T. Stites against Dr. Gillum caused her to suffer embarrassment and economic expense.

16) [sic] The Court finds that for good cause sanctions shall assess against Robert T. Stites individually and in his capacity as attorney of record pursuant to Rule 13 and Rule 215b of the Texas Rules of Civil Procedure.

17) The court finds that sanctions shall not assess against Ellen Louise Kirkham.

The Court then rendered judgment in favor of Gillum in the amount of $18,000.

Stites contends the sanctions are excessive and the trial court failed to consider less severe sanctions, as mandated by the Texas Supreme Court in *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). Secondly, Stites asserts the court erred in awarding the $18,000 sanction because was there was no evidence that the attorney's fees incurred were reasonable or necessary.

■ Under *TransAmerican*, sanctions must be "just," which means there must be a reasonable relationship between the offensive conduct and the sanction, and the sanctions must not be excessive, *i.e.*, the punishment should fit the crime. *Id.* The offensive conduct in the instant case was Ellen Kirkham's groundless suit against Gillum which Stites filed in bad faith. The sanction imposed is not excessive because it does not even repre-

 

sent full financial compensation to Gillum for her attorney's fees at trial or on appeal, or for loss of compensation due to her two-week absence from her medical practice, or any compensation for her embarrassment over the filing of the suit. We do not find that the $18,000 sanction is excessive or violative of the premises espoused in *TransAmerican*.

Stites is correct that there was no proof that the attorney's fees incurred by Gillum were either reasonable or necessary. Both Stites and Gillum cite a case which is dispositive of this issue, *Glass v. Glass*, 826 S.W.2d 683, 688 (Tex.App.—Texarkana 1992, writ denied). In *Glass*, attorney's fees were imposed as sanctions pursuant to Rules 13 and 215(2)(b) of the Texas Rules of Civil Procedure. The appellate court upheld the award notwithstanding the lack of proof of reasonableness or necessity, stating:

> In *Firestone Photographs, Inc. v. Lamaster*, 567 S.W.2d 273, 277–78 (Tex.Civ. App.—Texarkana 1978, no writ), we held that the choice of the appropriate sanctions is for the trial court to determine, and so long as the sanctions are within the authority vested in the trial court, they will not be overturned unless they constitute a clear abuse of discretion. *Id.* We also held that a judgment is not invalid because a party fails to prove his attorney's fees where the judgment is not one for earned attorney's fees, but rather a judgment imposing attorney's fees as sanctions. *Id.* The amount of attorney's fees awarded *as sanctions* for discovery abuse is within the sound discretion of the trial court and will only be set aside upon a showing of clear abuse of that discretion. *Brantley v. Etter*, [677 S.W.2d 503, 504 (Tex.1984) (per curiam) ]. Proof of the necessity or reasonableness of attorney's fees is not required when such fees are assessed as sanctions. *Id.; Allied Assoc. v. INA County Mut. Ins.*, 803 S.W.2d 799, 799 (Tex.App.—Houston [14th Dist.] 1991, no writ.)

*Glass*, 826 S.W.2d at 688 (emphasis in original).

We do not find the sanctions imposed by the trial judge to be excessive or a clear abuse of discretion. Point of error ten is overruled.

The judgment of the trial court is affirmed.