SADEGHIAN V. WEBB

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-03-367-CV

KHOSROW SADEGHIAN APPELLANT

V.

JERRY WEBB, JANICE WEBB, APPELLEES

AND WELDON WILSON

------------

FROM THE 393RD DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Khosrow Sadeghian appeals from sanctions imposed against him under Texas Rule of Civil Procedure 13.  We affirm in part and reverse and render in part.

BACKGROUND

On March 31, 2000, Appellant filed suit against Appellees Weldon Wilson, Jerry Webb, and Janice Webb, alleging that in 1998 Appellees had trespassed upon property he had purchased the year before.  Specifically, Appellant alleged that Wilson, at the direction of and as an employee of the Webbs, utilized a tractor/front-end loader to expand Laney Road and in the course of doing so, trespassed, invaded, and encroached upon the entire length of the eastern boundary of Appellant’s property.  Appellant also alleged that Wilson, as employee of the Webbs, destroyed fences along the western boundary of appellant’s property, and created a drainage ditch channeling water onto the property thereby creating a ten-foot by six-foot deep canyon, effectively cutting off Appellant from the northern third of the property; this was all in violation of the Texas Water Code.  Lastly, Appellant alleged that Appellees cut down more than twenty, eight-foot poplar trees on Appellant’s property.  Appellant sought actual and exemplary damages and subsequently amended his petition to request a permanent injunction.

APPELLEES’ PLEADINGS

Wilson filed an original answer that included a general denial, verified denials, and affirmative defenses.  He also filed a counterclaim contending he was entitled to recover sanctions under Texas Rules of Civil Procedure 13 and 215 and Chapter 9 of the Texas Civil Practice and Remedies Code because Appellant’s claims are groundless and brought in bad faith and for purposes of harassment.  
See
 
Tex. R. Civ. P.
 13, 215; 
Tex. Civ. Prac. & Rem. Code Ann.
 ch. 9 (Vernon 2002).  The Webbs filed an original answer that included special exceptions, a verified denial, affirmative defenses, a general denial, and a general claim for attorney’s fees.  The Webbs did not file a counterclaim seeking to recover sanctions, nor did the request for attorney’s fees specify any statute or rule under which the Webbs sought attorney’s fees.

TRIAL ON THE MERITS

A bench trial was held on October 8, 2003.  At the conclusion of Appellant’s case-in-chief, Appellees made motions for judgment, claiming Appellant had not proven his case.  The court granted the motions.  The court then scheduled a later date for a bench trial on the Wilson’s counterclaim for sanctions.  On October 28, 2003, the court held the sanctions hearing and at the conclusion of the hearing the court withheld a ruling until the court reporter could transcribe the trial on the merits.  On November 24, 2003, the court signed a judgment that Appellant take nothing by his suit.  On that same day, the court signed two separate orders, one for Wilson and one for the Webbs, awarding sanctions to Appellees under Rule 13.

The nine-page sanctions order in favor of Wilson recites that Appellant filed groundless pleadings for the purpose of harassment, in violation of Rule 13.  The trial court awarded Wilson attorney’s fees as sanctions in the amount of $28,728.50, and appellate attorney’s fees that are contingent upon an unsuccessful appeal by Appellant.  The trial court also awarded Wilson $7,021.78 for out-of-pocket expenses and $11,000 representing the value of his time spent away from his business as a direct result of Appellant’s offensive conduct.

The four-page sanctions order in favor of the Webbs recites that the court on its own motion applied Wilson’s request for sanctions under Rule 13 to the Webbs “since sanction issues were identical to all defendants and plaintiffs were on notice as to the implications of Rule 13 of the Texas Rules of Civil Procedure.”  The court found that Appellant filed his suit against the Webbs for purposes of harassment and in bad faith.  The trial court awarded the Webbs $11,596.25 in attorney’s fees for defending themselves against Appellant’s “groundless” lawsuit, and appellate attorney’s fees that were contingent upon an unsuccessful appeal by Appellant.

TRIAL COURT’S FINDINGS AND CONCLUSIONS

The trial court initially filed twelve pages of findings of fact and conclusions of law regarding the judgment and sanctions awarded in favor of  Wilson; the court subsequently filed twelve more pages of supplemental findings of fact and conclusions of law.  
The court made a total of 118 findings of fact and 125 conclusions of law.
  Both the original and supplemental findings and conclusions indicate they are regarding the judgment and sanctions order in favor of Wilson.  However, in the text of the supplemental findings and conclusions, the court also mentions the judgment and sanctions order in favor of the Webbs.

The findings relevant to the specific sanctions issues raised by Appellant on appeal will be discussed in the pertinent sections of this opinion.  In its findings of fact and conclusions of law, the court found that Appellant has significant experience in purchasing real property at tax foreclosure sales, owning over 100 properties.  In 1997, Appellant purchased approximately nine acres of property at a tax foreclosure sale for $13,900.  Laney Road, a thirty-foot road and utility easement (“the easement”), has been in existence since at least the 1930s, and is located to the west of Appellant’s property.

The court found that Appellant knew this was an easement and not his private property, and Appellant threatened Appellees that if they didn’t clean up, then Appellant would sue them.  At the request of all parties, the court viewed Appellant’s property which was littered with “a vast amount of refuse.”
(footnote: 2)
 The court found that before Appellant filed suit for trespass and for violations of the water code, he went to Wilson’s house and threatened him that if Wilson did not clean up the mounds of litter on Appellant’s property, Appellant would sue him.
(footnote: 3)  The court determined that Wilson did not trespass on Appellant’s property or divert surface water.  The court further held that prior to suit being filed, Appellant knew that the Webbs had never asked Wilson to perform any work on the easement, nor had the Webbs directed any of the actions taken by Wilson.

TEXAS RULE OF CIVIL PROCEDURE 13

This rule provides, in pertinent part:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment. . . . If a pleading, motion or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanctions available under Rule 215-2b, upon the person who signed it, a represented party, or both.

Courts shall presume that pleadings, motions, and other papers are filed in good faith.  No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order.  “Groundless” for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law. 

Tex. R. Civ. P.
 13.  The purpose of Rule 13 is to check abuses in the pleading process, i.e., to insure that at the time the challenged pleading was filed the litigant's position was factually well grounded and legally tenable.  
Home Owners Funding Corp. v. Scheppler
, 815 S.W.2d 884, 889 (Tex. App.—Corpus Christi 1991, no writ).  T
he burden is on the party moving for sanctions to overcome the presumption of Rule 13 that the pleading was filed in good faith. 
GTE Communications Sys. Corp. v. Tanner
, 856 S.W.2d 725, 731 (Tex. 1993) (orig. proceeding).

APPELLANT’S ISSUES

Appellant raises nine issues on appeal related to the granting of the sanctions against him.  Appellant contends the sanctions were an abuse of discretion because he proved a prima facie case and therefore sanctions were not appropriate, there was no evidence of groundless pleading or bad faith on the part of Appellant, the trial court erred by ignoring a judicial admission made by Wilson’s attorney, the trial court erred by not making the required findings to support the sanctions, the sanctions were excessive, and sanctions should not have been awarded to the Webbs because they did not plead for sanctions.  While some of these issues are argued separately, most are argued jointly.

A statement in Appellant’s brief recites that he appeals from the trial court’s take nothing verdict, and his sixth issue contends he proved a prima facie case of trespass.  However, other than arguing this issue in the context of the award of sanctions, Appellant has not briefed the issue on the merits.  Further, during oral argument before this court, Appellant did not indicate that he was appealing the merits of the case.  Therefore, the propriety of the trial court’s take nothing judgment is not before us in this appeal.

STANDARD OF REVIEW

We review Rule 13 sanctions under an abuse of discretion standard.  
Stites v. Gillum
, 872 S.W.2d 786, 788 (Tex. App.—Fort Worth 1994, writ denied).  
See GTE Communications
, 856 S.W.2d at 730-32 (applying abuse of discretion test to review of sanctions imposed under Rule 13).  To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or principles; in other words, whether the act was arbitrary or unreasonable.  
Downer v. Aquamarine Operators, Inc.
, 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986).  Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.  
Id
.

In reviewing the imposition of Rule 13 sanctions, a trial court’s ruling should be overturned only when it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence.  
Tarrant County v. Chancey
, 942 S.W.2d 151, 154 (Tex. App.—Fort Worth 1997, no writ);  
Stites
, 872 S.W.2d at 788.
(footnote: 4)  
To make this determination, we review the "particulars" of good cause set out in the sanctions order.
(footnote: 5)  
See
 
Miller v. State and County Mut. Ins. Co.
, 1 S.W.3d 709, 717-18 (Tex. App.—Fort Worth 1999, pet. denied).  In deciding whether a pleading meets the test of being both groundless and brought for the purpose of harassment, a trial court must examine the facts and circumstances existing at the time the pleading was filed.  
Chancey, 
942 S.W.2d at 155.

The Texas Supreme Court has stated that sanctions under Rules 13 and 215.2(b) must be “just,” which means there must be a reasonable relationship between the offensive conduct and the sanction imposed, and the sanction must not be excessive, i.e., the punishment should fit the crime.  
TransAmerican Natural Gas Corp. v. Powell
, 811 S.W.2d 913, 917 (Tex. 1991)(orig. proceeding).

SANCTIONS AWARDED TO THE WEBBS

In his fourth issue, Appellant asserts sanctions should not have been awarded to the Webbs because they never pled for sanctions either in their pre-trial pleadings, during trial, or after the trial, and therefore Appellant was not on notice that he would need to defend against a request by the Webbs for sanctions under Rules 13 and 215.

Rule 47 states that an original pleading which sets forth a claim for relief, whether an original petition, counterclaim, cross-claim, or third party claim, shall contain “a short statement of the cause of action sufficient to give fair notice of the claim involved.”  
Tex. R. Civ. P.
 47.  Additionally, a trial court’s final judgment must conform to the pleadings and the nature of the case proved so as to give the party all the relief to which they may be entitled either in law or in equity. 
 Tex. R. Civ. P.
 301.  A judgment must be based upon pleadings, and as the Texas Supreme Court has stated:

“(A) plaintiff may not sustain a favorable judgment on an unpleaded cause of action, in the absence of trial by consent. . . ." In determining whether a cause of action was pled, plaintiff's pleadings must be adequate for the court to be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty and without resorting to information aliunde the elements of plaintiff's cause of action and the relief sought with sufficient information upon which to base a judgment.  Mere formalities, minor defects and technical insufficiencies will not invalidate a default judgment where the petition states a cause of action and gives "fair notice" to the opposing party of the relief sought.

Stoner v. Thompson
, 578 S.W.2d 679, 682-83 (Tex. 1979) (internal citations omitted). 
 See Oil Field Haulers Ass'n v. R.R. Comm’n
, 381 S.W.2d 183, 191 (Tex. 1964) (stating general rule that plaintiff may not sustain a favorable judgment on an unpleaded cause of action in the absence of trial by consent).

Appellant is correct that the Webbs never pled for sanctions.  Their original answer requested attorney’s fees without stating the basis for their recovery.
(footnote: 6) Before the beginning of testimony on the first day of the two-day sanctions hearing, the Webbs’ attorney told the court that his clients have suffered losses as a result of Appellant’s “bully tactics.”  Without mentioning sanctions, the Webbs’ attorney stated that the Webbs had to miss work and had incurred attorney’s fees.  Appellant’s attorney strenuously objected that the Webbs had not presented any evidence at the trial on the merits regarding their claim for attorney’s fees, so it was waived; had never informed Appellant or the court of the reason why they believed they were entitled to attorney’s fees simply because they had prevailed on the merits; and had not filed any type of motion or document asking for sanctions.
(footnote: 7)  Appellant’s attorney further objected that the Webbs “really ought not to be here unless they are going to be witnesses because there are no pleadings.  We object to anything being tried by the Webbs for which there are no pleadings.”  Although present at the hearing, the Webbs’ attorney did not further participate in the first day of the sanctions hearing.

At the beginning of the second day of the sanctions hearing, a different attorney informed the court that she was present representing the Webbs in place of the first attorney who had other obligations.  Appellant’s attorney stated, “Your Honor, again we of course make our same objection to [the Webbs’ second attorney] that we did earlier.  And I believe the Court’s carrying that.”  Although present, the Webbs’ attorney did not participate in the second day of the sanctions hearing, but as the hearing concluded stated:

Your Honor, may I speak just a moment.  
I’m not a part of any sanctions hearing, I realize that.
  
But up until now we have not had a chance to even offer evidence of how much the Webbs have paid in attorneys fees, and we did ask for attorneys fees in our answer.  We did plead some verified denials and some affirmative defenses.  And I would just like the opportunity to present that evidence whenever the Court deems it proper.  And we would be asking that under equitable principles. [Emphasis added]

Appellant’s attorney objected that the Webbs “have not applied for nor done anything” nor do they have any pleadings to support their claim.  When the court questioned the Webbs’ attorney regarding the nature of their claim, the attorney responded that “we simply asked for attorneys fees in our -- in our answer which contained, as I said, verified denials and some affirmative defenses.”  Appellant’s attorney stated, “It is not identified as a counterclaim, nor is it filed as a counterclaim, nor was service of process accomplished as a counterclaim, Your Honor.  They just threw a general ‘we want our attorneys fees’ claim in their answer.”

The court informed the parties that “It is going to take me some time to sort out all these issues, obviously; but I’m going to let you offer your testimony regarding attorneys fees.  And I would like for you to give me some -- something to support them in the law.”

Given the fact that the Webbs’ original answer contained a request for attorney’s fees, we can certainly understand why the trial court permitted their attorney to testify concerning the amount and reasonableness of the attorney’s fees sought by them.  The court then requested that the Webbs provide the court with legal support for their alleged entitlement to attorney’s fees.  However, other than the “Statement of Attorney Fees” mentioned in footnote 7 of this opinion, the record does not contain any brief, pleading, or other document filed by the Webbs in the trial court addressing this issue, either pre- or post-trial.
(footnote: 8)
 In its order granting sanctions to the Webbs, the trial court stated:

The Court, on its own motion, applied the sanctions request to all defendants in this case, since sanction issues were identical to all defendants and plaintiffs were on notice as to the implications of Rule 13 of the Texas Rules of Civil Procedure.

In its findings of fact, the court found that the Webbs “requested attorneys fees as sanctions in their pleadings.”

After the trial court entered the sanctions order in favor of the Webbs, Appellant filed a motion for new trial asserting, 
interalia
, that the award of sanctions to the Webbs was improper because there were no pleadings to support the award and therefore Appellant did not have fair notice under Rule 13 that the court might award sanctions.  The Webbs did not file a response and the motion for new trial was overruled by operation of law.

In their reply brief on appeal, the Webbs do not address Appellant’s contention that sanctions were not appropriate because there were no pleadings or notice to Appellant that the Webbs were seeking attorney’s fees as sanctions under Rule 13 or any other rule.  In oral argument before this court, the Webbs asserted that Appellant was on notice that the Webbs sought sanctions under Rule 13 because this issue was discussed at the end of the case on the merits. A review of the record indicates that at the conclusion of Appellant’s case on the merits, the trial court granted a take nothing judgment in favor of Wilson and the Webbs.  Wilson’s attorney then said he had three witnesses he needed to call in order to establish frivolousness.  Appellant’s attorney objected to proceeding with a sanctions hearing because the present trial setting was to try the merits of the case, and he and his client did not have notice of a sanctions hearing.  Wilson’s attorney responded that Wilson had a pending counterclaim.  The court determined that it would set a separate hearing for the counterclaim. Although the Webbs’ attorney was present during this discussion, she did not participate in the discussion regarding frivolousness, the Wilson’s pending counterclaim, or setting a separate hearing date for a sanctions hearing.

Attorney’s fees are not automatically recoverable by the prevailing party to a lawsuit; a party may recover attorney's fees only if provided for by statute or by contract.  
Gulf States Utils. Co. v. Low
, 79 S.W.3d 561, 567 (Tex. 2002).  Rule 13 authorizes such sanctions as are available under Rule 215.2(b), which includes attorney’s fees.  
Tex. R. Civ. P.
 13, 215.2(b); 
Stites, 
872 S.W.2d at 796.  Additionally, 
Rule 13 provides that if a pleading is signed in violation of the rule, the trial court “upon its own initiative, after notice and hearing” shall impose appropriate sanctions.”  
Tex. R. Civ. P.
 13.  Therefore, in the instant case, assuming the other requirements of Rule 13 were met, the trial court was authorized to impose sanctions on its own motion, and these sanctions could include attorney’s fees for the Webbs.

Appellant contends that he was not on notice from either the Webbs or the trial court that the Webbs sought to recover attorney’s fees as sanctions under the specific requirements of Rule 13 or any other rule.  The record reflects that although the Webbs’ original answer sought attorney’s fees, they never filed any pleading that would put Appellant on notice that the attorney’s fees were sought as sanctions under the provisions of Rule 13 which contains very specific elements that must be proved prior to the assessment of attorney’s fees as sanctions.  Indeed, we find it significant that at the sanctions hearing the Webbs’ own attorney volunteered to the court in no uncertain terms that she “was not a part of any sanctions hearing”; she just wanted to present evidence of her clients’ attorney’s fees because their original answer contained a request for attorney’s fees.

Appellant’s attorney repeatedly objected to the Webbs’ attorney testifying in the sanctions hearing regarding attorney’s fees because the Webbs did not have any pleadings on file pertaining to sanctions.  Therefore, the record clearly reflects that this issue was not tried by consent.  Lastly, there is no indication that the trial court ever provided notice to Appellant either prior to or at the sanctions hearing, or at any time before entering the sanctions order in favor of the Webbs, that the court on its own initiative was considering imposing sanctions in favor of the Webbs under Rule 13.

Considering all the facts presented in the record, along with the procedural history of the case, we conclude that Appellant was never put on notice by the Webbs or by the trial court that sanctions might be awarded against him under Rule 13 with regard to the Webbs.
(footnote: 9)  We hold the trial court abused its discretion in awarding sanctions in favor of the Webbs, and we sustain Appellant’s fourth issue.

SANCTIONS AWARDED TO WILSON

Although Appellant was present at the trial on the merits of his claim, he did not appear at the two-day sanctions hearing.  The trial court found that Appellant acquired the subject property at a tax foreclosure sale for $13,900 and has significant experience in purchasing real property at tax foreclosure sales, owning over 100 properties.  The court determined that Wilson did not trespass on Appellant’s property, and Appellant produced no evidence, or alternatively no credible evidence, as to who supposedly trespassed on his property during the time frame alleged.  The court held that Appellant’s allegations regarding conduct that allegedly occurred on his property took place on a dedicated easement, and such conduct was permitted.  The court found that prior to filing suit, and after suit was filed and well before trial, Appellant knew of the existence of the dedicated easement, yet groundlessly proceeded with his claims for trespass.

The court found that at trial on the merits neither Appellant nor his only other witness, Massey Ebrahim, a friend and business associate of Appellant, testified that they saw Wilson do any of the acts that Appellant alleged in his lawsuit.  Further, neither Appellant nor Ebrahim performed any tests with regard to the property to determine whether any surface water drainage had occurred. The court found that one year after Wilson’s alleged trespass on Appellant’s property, Appellant made a monetary demand on Wilson for alleged trespass and threatened that if Wilson did not clean up the items on the property,
(footnote: 10) Appellant would make the next five years of Wilson’s life a “living hell” because Appellant had “a family full of lawyers.”

Regarding Appellant’s claim for violation of the Texas Water Code, the court found that Appellant introduced no evidence, or alternatively no credible evidence, that the natural flow of surface water drainage was altered, causing  damage to Appellant.  The court concluded that Appellant’s claim for violation of the Texas Water Code was groundless in its entirety and brought for purposes of harassing Wilson.

The court also determined that Appellant intimidated and harassed Wilson’s nine-year-old and eleven-year-old daughters by going to Wilson’s house when Wilson was not home and by making numerous harassing telephone calls to Wilson’s home.  Wilson’s daughters both testified at the sanctions hearing and their testimony supports the trial court’s findings.

The court further determined that the offensive conduct of Appellant is independent of the acts of his attorneys and constitutes just cause to award sanctions against Appellant pursuant to Rule 13.  The court concluded that the sanctions requested by Wilson (i.e., attorney’s fees, litigation expenses, and costs) could have been avoided had Appellant, who is experienced in real estate matters, not filed this suit with the knowledge that his claims were groundless and brought for the purpose of harassment.

Having reviewed the trial court’s findings and all the evidence, we hold that the evidence supports the trial court’s findings that Wilson overcame the presumption that Appellant’s pleadings were filed in good faith, and Wilson established that Appellant’s actions in filing his original petition and in pursuing the case against Wilson for five years (from time of filing until trial) were groundless and brought for purposes of harassment.  We overrule Appellant’s first, second, third, fifth, and sixth issues.

Appellant’s issues seven (appellate attorney’s fees cannot be awarded as sanctions) and eight and nine (the sanctions were inappropriate and excessive) were not argued or briefed by Appellant.  Accordingly, they are waived.  
See
 
Tex. R. App. P.
 38.1(h).

CONCLUSION

We affirm the trial court’s order awarding sanctions to Wilson.  We reverse the trial court’s order awarding sanctions to the Webbs and render judgment that the Webbs are not entitled to sanctions.

DIXON W. HOLMAN

JUSTICE

PANEL B:  LIVINGSTON, HOLMAN, and WALKER, JJ.

DELIVERED:  March 31, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The court recited that the property was littered 
with “a vast amount of refuse, including an abandoned mobile home with large sections of its siding missing or vandalized, a broken down school bus, broken down cars, broken down boats, thousands of railroad ties piled in at least four stacks ranging from 3-6 feet high and up to 300 feet in length, piles of concrete, old tires, abandoned furniture, desks, shelves work benches, paint cans, oil drums, tar cans, fence pallets, an old refrigerator, bicycles, and other garbage.”

3:
Specifically, the court found that when Wilson refused to clean up the property because he had not put any of the items on the property, Appellant said he had a family full of lawyers and would make the next five years of Wilson’s life a “living hell.”  After these threats were made, Appellant went to Wilson’s home on an afternoon when Wilson was not there.  Appellant approached Wilson’s nine-year-old and eleven-year-old daughters and told them he was going to sue their daddy.  Appellant then began making numerous threatening phone calls to Wilson’s house at times when he knew Wilson and his wife would not be home, but the daughters would be present.  Appellant interrogated the daughters regarding Wilson’s financial information and other personal matters.

4:
See also Cooter & Gell v. Hartmarx Corp.
, 
496 U.S. 384, 405, 110 S. Ct. 2447, 2461 
(1990) (discussing abuse of discretion test as applied to sanctions imposed pursuant to 
Fed. R. Civ. P.
 11), and 
Chambers v. Nasco, Inc.
, 501 U.S. 32, 55, 111 S. Ct. 2123, 2138 (1991) (abuse of discretion test is applied to sanctions imposed under a court's inherent power).

5:
We do not agree with Appellant’s assertion that the trial court's orders do not set forth the particulars of the good cause justifying the sanctions.  The orders, along with the court's findings of fact and conclusions of law, clearly specify the particular acts upon which the sanctions were based.  
Cf. Chancey
, 942 S.W.2d at 155 (holding sanctions order was too general to support award).

6:
The entirety of the Webbs’ pleading regarding attorney’s fees states “Because of plaintiff’s allegations in plaintiff’s petition, it was necessary for defendants to retain the services of [Webbs’ attorney], a licensed attorney to defend their rights in this matter.”

7:
Prior to the trial on the merits, the Webbs’ attorney filed a “Statement of Attorney Fees” which recites that the Webbs have paid her a specified flat fee, and that her future fee will be $200 per hour.  This document does not mention any request by the Webbs that Appellant reimburse them for their attorney’s fees.

8:
This is unlike the series of documents filed by Wilson and Appellant regarding the attorney’s fees sought by Wilson. 
 Prior to the sanctions hearing, Wilson filed a trial brief on the issue of the sanctions sought by him.  After the sanctions hearing and before the judgment and sanctions orders were signed, Appellant filed a post-trial brief addressing the issue of sanctions for Wilson and the Webbs.  Wilson then filed a response, to which Appellant responded.

9:
When an order of sanctions refers to one specific rule, either by citing the rule, tracking its language, or both, we are confined to determining whether the sanctions are appropriate under that particular rule.  
See Finlay v. Olive
, 77 S.W.3d 520, 524 (Tex. App.—Houston [1st Dist.] 2002, no pet.); 
Metzger v. Sebek
, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ denied), 
cert.denied
, 516 U.S. 868 (1995).  Because neither the trial court’s sanctions order nor its findings and conclusions make any mention of awarding sanctions under Chapter 9 of the Civil Practice and Remedies Code, we need not determine whether the sanctions award to the Webbs can be upheld under that chapter.

However, we note that although Chapter 9 permits the trial court to award sanctions on its own initiative if a party files a frivolous pleading, the trial court is first required to provide specific notice to the offending party.  
See
 
Tex. Civ. Prac. & Rem. Code Ann.
 § 9.012 (court may on its own motion determine a pleading is frivolous and “the court shall, not earlier than 90 days after the date of the determination, at the trial or hearing or at a separate hearing, following reasonable notice to the offending party, impose an appropriate sanction”).  
See also
 
id.
 § 10.002 (“The court on its own initiative may enter an order describing the specific conduct that appears to violate Section 10.001 [signing frivolous pleading or motion], and direct the alleged violator to show cause why the conduct has not violated that section.”).

10:
See items listed in 
footnote 2, 
infra.