**HOME OWNERS FUNDING CORPORATION OF AMERICA, Servicing Agent for the Government National Mortgage Association, Appellant,**

v.

**Gerald SCHEPPLER and Mary Scheppler, Appellees.**

**No. 13–90–448–CV.**

Court of Appeals of Texas, Corpus Christi.

Sept. 5, 1991.

John A. Seib, Jr., Eric D. Ryan and John J. Gallagher, Busch, Ryan & Seib, Dallas, for appellant.

Edward F. Barker, Barker & King, Allan R. King, Frank E. Weathered, Dunn, Cason & Weathered, Corpus Christi, for appllees.

Before NYE, C.J., and HINOJOSA and SEERDEN, JJ.

## OPINION

HINOJOSA, Justice.

This is an appeal from an order denying Home Owners Funding Corporation of America (HOFCA) sanctions under Tex. R.Civ.P. 13. HOFCA argues on appeal that the Schepplers' claims against it were as a matter of law groundless and brought in bad faith, thereby requiring the court to order sanctions. We affirm the judgment of the trial court.

The Schepplers' litigation arose in 1989 when they attempted to purchase a truck but were denied credit. Mr. Scheppler was advised that he was denied credit for the purchase because of an unacceptable credit report originating with Security Pacific Manufacturers Funding (Security). This credit report arose from the Schepplers' purchase of a satellite dish in 1985. Security had financed the satellite dish for the Schepplers. The Schepplers later brought suit alleging that the satellite dish was a defective product. This suit was settled, but Security made a negative credit report after the settlement. The Schepplers then filed suit against Security, asserting that the auto dealer's denial of credit was based upon an inaccurate credit report.

During a deposition taken after the suit was filed, the Schepplers learned that another negative credit report had originated with HOFCA. The Schepplers amended their pleadings to include HOFCA. The Schepplers alleged that HOFCA had misreported a repossession and that no financing agreement had ever existed between HOFCA and the Schepplers. HOFCA filed a motion for summary judgment which the trial court granted. After the summary judgment had been severed from the remaining causes of action, HOFCA filed what it called its motion to modify the judgment to include damages under Tex. R.Civ.P. 13. HOFCA's allegation was that the suit against it was frivolous and brought in bad faith because the Schepplers' attorney had done no investigation prior to filing the lawsuit. HOFCA asserted that if the claim had been investigated, the Schepplers' attorney would have determined that the credit report was, in fact, accurate. After a hearing, the trial court denied the motion for sanctions.

■ Before reaching the merits of the case, we address the Schepplers' argument that this Court is without jurisdiction to determine this appeal. Judgment was entered on August 3, 1990. On September 4, 1990, HOFCA filed an instrument entitled "Motion to Modify and Reform Judgment to Include Sanctions Against Plaintiffs Gerald and Mary Scheppler and their Counsel of Record, F. Edward Baker and Allan King, Alternatively Motion for Sanctions". The Schepplers argue that the motion to modify was nothing more than an improper motion for sanctions and should not be considered a motion to modify for purposes of extending the plenary jurisdiction of the trial court and the deadline for perfection of appeal. They assert HOFCA's attempted perfection of the appeal on November 16, 1990 was not timely. We disagree.

Tex.R.Civ.P. 329b(g) provides that a motion to modify, correct, or reform a judgment shall be filed within the period of time prescribed for a motion for new trial and shall extend the plenary power of the trial court and the time for perfecting appeal. The Texas Supreme Court has indicated on several occasions that if a judgment is modified in any respect, whether it is substantial or not, commencement of the appellate timetable is delayed. *Landmark American Ins. Co. v. Pulse Ambulance*

*Serv., Inc.,* 813 S.W.2d 497 (Tex.1991); *Check v. Mitchell,* 758 S.W.2d 755, 756 (Tex.1988).

■ Here, the motion specifically requests a modification of a judgment. We will not look at the propriety of the request in determining if we have jurisdiction over this case. Rather, we construe the rules liberally and look only to the effect if such motion was granted. The requested motion, if granted, would have resulted in a modified judgment. We conclude that a post-judgment motion, that would result in a change in the judgment, if granted, is one which is contemplated by Rule 329b. *Brazos Electric Power Co-op., Inc.,* 734 S.W.2d 126, 128 (Tex.App.—Dallas 1987, no writ). HOFCA's motion to modify therefore extended the trial court's plenary power and the time for perfecting appeal in the same manner as a motion for new trial. We assume jurisdiction of the case.

HOFCA's sole point of error on appeal is that the trial court erred in failing to award sanctions pursuant to Tex.R.Civ.P. 13, because the evidence established their entitlement as a matter of law. It contends that the Court of Appeals should conduct a *de novo* review of the record in order to determine whether appellees' pleadings and subsequent conduct in the trial court violated Rule 13. HOFCA argues that a *de novo* review will result in a finding by this Court that appellees' pleadings violated Rule 13 as a matter of law. Alternatively, it argues that if an abuse of discretion standard is applicable, the trial court's refusal to order sanctions was an abuse of discretion.

Because there is little case law interpreting Rule 13, we begin by determining the proper standard for our review of the trial court's decision.

Rule 13 provides, in relevant part, as follows:

The signatures of attorneys or parties constitute a certificate by them that they have read the pleading, motion or other paper; that to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for purposes of harassment.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, after notice and hearing, shall impose an appropriate sanction available under Rule 215–2b upon the person who signed it, a represented party, or both.

Courts shall presume that pleadings, motions, and other papers are filed in good faith. No sanctions under this rule may be imposed except for good cause, the particulars of which must be stated in the sanction order. "Groundless" for purposes of this rule means no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law ...

Because there is no definitive statement under Texas case law setting forth the appropriate standard to apply when reviewing Rule 13 motions, we look to federal case law interpreting a similar rule. Recently, the United States Supreme Court was presented with the identical question in determining what standard to apply to review violations of Fed.R.Civ.P. 11.[1] *Cooter & Gell v. Hartmarx Corp.,* —— U.S. ——, 110 S.Ct. 2447, 2461, 110 L.Ed.2d 359

---

1. Both Texas Rule 13 and Federal Rule 11 are virtually identical in content and each directs the trial court to impose appropriate sanctions if a pleading is signed in violation of the rule. Federal Rule 11 provides in part:

   ... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of the rule, the Court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

(1990). Relying on federal circuit court interpretations of Rule 11 and its earlier decision interpreting the standard of review applicable in Equal Access to Justice Act, 28 U.S.C. § 2412(d), cases, the Supreme Court concluded that the appropriate standard to apply is an "abuse of discretion" standard.

In *Cooter & Gell*, the United States Supreme Court was also faced with the argument that the appellate court should conduct a *de novo* review of a trial court's decision on a sanctions motion. The Court specifically rejected this approach and found that the nature of the proceedings conducted at the trial level warranted applying a "deferential standard" to all issues raised by a Rule 11 violation. Relying on its decision in *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (applying "abuse of discretion" standard to proceedings brought under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)), the Court reasoned that the sound administration of justice required that deference be given to the "judicial actor" who is better positioned to decide the issues before it in a Rule 11 motion. A district court's determination of whether a legal position is "substantially justified" depends greatly on factual determinations.

A *de novo* review, on the other hand, would require an appellate court to determine whether the attorney's legal arguments were plausible at the time the pleadings were filed. In *Cooter & Gell*, the Supreme Court found that such investment of time and energy by the appellate court " 'will either fail to produce the normal law-clarifying benefits that come from an appellate decision on a question of law, or else will strangely distort the appellate process' " by establishing circuit law in " 'a most peculiar, second-handed fashion' ". *Cooter & Gell*, 110 S.Ct. at 2460. It further reasoned that the issues involved in determining whether Rule 11 was violated are quite often "fact-intensive close calls," better suited for a district court's determination.

The Court, in *Cooter & Gell*, also looked to the Rule's policy goals in adopting an "abuse-of-discretion" standard:

> ... The district court is best acquainted with the local bar's litigation practices and thus best situated to determine when a sanction is warranted to serve rule 11's goal of specific and general deterrance. Deference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them. Such deference will streamline the litigation process by freeing appellate courts from the duty of reweighing evidence and reconsidering facts already weighed and considered by the district court; it will also discourage litigants from pursuing marginal appeals, thus reducing the amount of satellite litigation. *Id.* 110 S.Ct. at 2460.

Although the Court recognized that a deferential approach to the review of Rule 11 motions would allow variations among district courts identifying what conduct violates Rule 11, it determined that such variations were inevitable. The Court reasoned that a *de novo* review would also unlikely establish clear guidelines for the lower courts to follow; nor clarify the underlining principles of law.

We believe that the same deferential approach should be taken in reviewing state court rulings on Rule 13 motions for sanctions. Rule 13 motions also require the trial court to make factual determinations concerning whether a party's legal position as stated in the pleadings is substantially justified. Obviously, a trial judge hearing the evidence, examining the credibility of the witnesses, and familiar with the litigation practices of the local bar, is in a much better position than an appellate court to determine whether Rule 13 has been violated, especially in the case of "fact-intensive close calls". A *de novo* review would only create a myriad of opinions by appellate courts concerning what constitutes conduct which violates Rule 13, creating, rather than reducing, confusion on what guidelines lower courts should apply in these cases.

■ The policy considerations identified by the Supreme Court in *Cooter & Gell* are equally applicable here. Rule 13 is a potentially effective mechanism by which state courts can control the litigants and the nature of the litigation before them. Our existing appellate process would not provide a productive response to the dilemma faced by lower courts in attempting to eliminate the abuses which prompted the enactment Rule 13. For these reasons, we hold that an appellate court should apply an "abuse of discretion" standard in reviewing a trial court's Rule 13 determination.[2] We agree with the United States Supreme Court in its holding that a trial court's ruling should be overturned only when it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *See Cooter & Gell,* 110 S.Ct. at 2461.

■ The test for determining if the trial court abused its discretion is whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). Thus, if the trial court acts in an arbitrary or unreasonable manner, it abuses its discretion. *Loftin v. Martin,* 776 S.W.2d 145, 146 (Tex.1989); *Downer,* 701 S.W.2d at 241–42; *Smithson v. Cessna Aircraft Co.,* 665 S.W.2d 439, 443 (Tex.1984). The trial court does not necessarily abuse its discretion if under the same facts an appellate judge would decide the matter differently, or if the court commits a mere error in judgment. *Loftin,* 776 S.W.2d at 146; *Downer,* 701 S.W.2d at 242; *Southwestern Bell Tel. v. Johnson,* 389 S.W.2d 645, 648 (Tex.1965).

■ The purpose of Rule 13 is to check abuses in the pleading process, i.e. to insure that at the time the challenged pleading was filed the litigant's position was factually well grounded and legally tenable. *Cooter & Gell,* 110 S.Ct. at 2460. Thus, in determining whether Rule 13 has been violated, a trial court must examine the facts available to the litigant and the circumstances existing at the time the

pleading is filed. It must also determine, in some instances, whether at the time the pleading was filed the legal arguments asserted were "warranted by good faith argument for the extension, modification, or reversal of existing law". Tex.R.Civ.P. 13. The trial court may look to, for example, whether or not an attorney has more than sufficient time to prepare a complaint or whether he has only a few days before the statute of limitations runs. *Cooter & Gell,* 110 S.Ct. at 2454. The latter may cause a trial court to determine that the prefiling investigation was reasonable, the former may not. Ultimately, the trial court is required to examine the signer's credibility taking into consideration all the facts and circumstances available to him at the time of the filing.

■ In reviewing the trial court's application of the guiding rules and principles behind Rule 13 and its factual findings supporting its Rule 13 ruling, we ordinarily look to its formal findings of facts and conclusions of law. Here, HOFCA did not request findings of fact and conclusions of law and the trial court did not make any. When such findings of fact and conclusions of law are not made in a trial to the court, the judgment implies all necessary fact findings to support it. *In re W.E.R.,* 669 S.W.2d 716, 717 (Tex.1984). We will uphold the judgment on any applicable theory. *Guaranty County Mutual Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986).

The evidence before the trial court showed that the Schepplers learned of the HOFCA credit report during their depositions in December of 1989. This was the first time that they became aware of another negative credit report concerning them and originating with HOFCA. The negative HOFCA credit report was brought to their attention by Charles Pignulo, the attorney who represented Security in the underlying suit, and through a review of a document presented them during the depositions by Security's lawyer. Mrs. Scheppler testified in deposition that she had not heard of HOFCA or a repossession before

---

2. *See, P.N.L. Inc. v. Owens,* 799 S.W.2d 439, 441 (Tex.App.—El Paso 1990, no writ) in which the appellate court assumed that abuse of discretion was applicable in reviewing a Rule 13 motion.

being presented with HOFCA's negative credit report by Security's lawyer. Mr. Scheppler testified in his deposition that he was not sure whether he learned of the existence of the HOFCA report prior to his wife's deposition and that he did not remember HOFCA being mentioned by the auto dealer that initially denied the Schepplers credit for the purchase of the truck.

Although Security's attorney, Mr. Pignulo, testified during the sanctions hearing that the period between the time the Schepplers *became* aware of HOFCA's possible involvement and the adding of HOFCA to the lawsuit was exceedingly short, he also stated that he had wondered why HOFCA had not been joined in the suit because its credit report was much more damaging than Security's. According to Pignulo, it would have been more logical to assume that if the dealer had refused credit, it would have been based on HOFCA's report. He testified that it was not surprising that the Schepplers did not know of the relationship between HOFCA and Mortgageamerica.[3] Pignulo stated that an examination of HOFCA's negative credit reports would have provided the basis for suing HOFCA if it was felt those reports were libelous.

HOFCA's attorney, John Seib, testified that (1) the lawsuit was frivolous and brought in bad faith, (2) he notified the Schepplers by a letter to their attorney of the legitimacy of HOFCA's negative credit report, (3) Scheppler's attorney demanded $150,000 to settle the lawsuit, asserting that defending a mortgage company in Corpus Christi was a losing cause and, therefore, money should be paid to avoid exposure, and (4) neither the Schepplers nor their attorney conducted a reasonable inquiry prior to filing the suit.

We cannot say that the trial court abused its discretion. There is evidence in the record, both undisputed and conflicting, to support the trial court's refusal to find that, under the facts available to the Schepplers and the circumstances existing at the time of the filing of the challenged pleadings, their filing of suit against HOFCA was not substantially justified and that their prefiling investigation was unreasonable.[4] HOFCA's point of error is overruled.

We will not address HOFCA's argument that it is proper to bring a motion for sanctions after judgment because it is unnecessary to our disposition. Although the record in this case clearly reflects that the trial court thought that HOFCA had filed the motion too late and it refused to grant the sanctions for that reason, we have determined an independent ground supports the trial court's decision. Therefore a discussion on whether their motion was timely is unwarranted. The judgment of the trial court is affirmed.

---

3. The basis of the repossession and ultimate negative credit report was a Mobil Home Retail Installment Contract and Security Agreement entered into with Future Homes by the Schepplers in February, 1979. The Contract and Security Agreement was assigned to Mortgageamerica Corporation. The Schepplers subsequently sold the mobile home on an assumption agreement to I.E. Jacob and Evelyn M. Jacob who in turn transferred it to subsequent purchasers, the last of which eventually defaulted and thus the repossession by HOFCA. It is not

disputed that at all times the Schepplers' remained liable on the note.

4. We note that the burden of proof on a Rule 13 motion is upon the moving party. In this instance, HOFCA had the burden of proving to the trial court that, at the time of the filing of the lawsuit against HOFCA, the Schepplers' position was not factually well grounded and not legally tenable. *See* Tex.R.Civ.P. 13. ("Courts shall presume that pleadings, motions, and other papers are filed in good faith ...")