# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-01-00159-CV

---

**Carolyn Barnes, Individually and as Next Friend of William Zimmer Barnes and Charles Austin Lee Bednorz, Appellant**

**v.**

**Calvin R. Sulak; Lt. Wayne Lock; Sgt. Ralph Fisher; R. C. Nichols; and Williamson County Sheriff's Department, Appellees**

---

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT NO. 99-360-C368, HONORABLE DONALD HUMBLE, JUDGE PRESIDING**

Carolyn Barnes, individually and as next friend of her minor sons, William Zimmer Barnes and Charles Austin Lee Bednorz,[1] appeals the summary judgment that she take nothing on her claims against the Williamson County Sheriff=s Department[2] and its employees, Deputy Calvin R. Sulak, Lt. Wayne Lock, and Sgt. Ralph Fisher, as well as Williamson County Attorney=s Office investigator R.C. Nichols. Her claims arise from her arrest after Sulak stopped her vehicle on a highway upon perceiving that she failed to signal a turn sufficiently in advance of the turn; the arrest followed a verbal confrontation during which Barnes admittedly refused to produce proof of financial responsibility, refused to cease talking on her mobile telephone, and reportedly threatened legal action against Sulak. She claims appellees violated common-law, statutory, and constitutional provisions while arresting and jailing her. She contends that the district court erred by refusing to hear or grant several of her motions directed against appellees= pleadings and summary-judgment evidence, by refusing to hear or grant her motion for continuance, by striking her response to appellees= motion for summary judgment, by granting appellees= motion for summary judgment, by granting Rule 13 sanctions against her without holding a hearing, and by refusing to hear her

---

[1] The parties treat the minors, William and Charles, as appellants. However, the petition presents them as minors represented by Barnes as their next friend, not suing on their own behalf. Thus, we refer to Barnes as a single appellant, albeit here in two capacities.

[2] This is the governmental entity Barnes named in her original petition. In response to the appellees= motion for summary judgment that argued in part that the sheriff=s department was the incorrect defendant, Barnes filed amended petitions that named Williamson County the defendant Ain all its capacities whether doing business as Williamson County Commissioner=s Court and/or Williamson County Sheriff=s Department, and/or Williamson County Jail, jointly and severally.@ In the caption of her petition she named the defendants as AWilliamson County Sheriff=s Department a/k/a Williamson County@ doing business as the other entities. Because the judgment expressly names the sheriff=s department, however, we use that name in the style of the case.

postjudgment motions. We will affirm the judgment in part and reverse and render judgment in part. The revised judgment will be that both sides take nothing by their claims.

## BACKGROUND

**Factual background**

The parties agree that, on July 20, 1997, Sulak stopped Barnes=s vehicle as she was driving on a public highway near Seward Junction with her two sons, then ages three and nine years, that Barnes used her cellular phone after the stop despite directives to hang up, that more officers arrived on the scene, and that Barnes was arrested and taken to jail for an overnight stay. The sides differ in the details and the motivations behind the others= actions.

### *The defendants= version*

Sulak=s version appears in his offense report, attached to appellees= motion for summary judgment. He said he was driving slowly (forty miles per hour in a sixty-five zone) and became suspicious of a car that would not pass him. He pulled over, let the car pass, and followed it to the intersection of Texas Highway 29 and United States Highway 183. He noted that the car=s rear license tag was expired and that the trunk lock had been removed; the latter indicated to him that the car might be stolen. When the car signaled a turn only fifty feet before the intersection instead of the required one hundred, Sulak activated his overhead lights to signal the vehicle to stop.

Sulak wrote that he approached the vehicle and requested to see the driver=s license and proof of insurance or financial responsibility. He said that the driver, Barnes, responded belligerently,

demanding to know why she was being stopped.  He told her he would tell her the reason for the stop when she supplied the requested documents.  She provided her license, but did not supply her proof of insurance.  Instead, she called his supervisor.  Sulak said he repeatedly demanded that she stop talking on the phone; after she refused to show proof of insurance, he asked her who could pick up her children.  He denied making any threats other than that he would yank her from her car.  Sulak said Barnes told him she would sue him if he arrested her and that he was Amessing with the wrong person.@ Barnes refused to do anything until Sulak=s supervisor arrived; upon learning that a supervisor was on the way, Sulak returned to his car to await the supervisor=s arrival.

Fisher arrived, followed by Lock.  Both talked with Barnes, but neither could gain compliance with their demands.  Lock initiated, and Fisher and Sulak assisted, the physical removal of Barnes from her car, which she resisted.  Sulak wrote that, based on her threats of a lawsuit in response to his threat of arrest, Barnes was arrested and booked for coercion of a public servant.

### *Barnes=s version*

Barnes, especially in her third amended petition, characterizes the events much more direly.  She calls Williamson County Aan abusive infrastructure funded by tax dollars which Plaintiff is forced to pay.@  She also calls it Aa racketeering influenced corrupt organization that has persisted in a pattern of abuse, flagrantly breaking the law, and engaging in gang-like activity for decades in Williamson County.@ She asserts that the sheriff=s department is Ano better than a street gang of thugs roaming around harassing people and extracting huge unconstitutional penalties in order to support their organized criminal activity.  The Mafia has more ethics, scruples, and decency than this poorly trained group of egomaniacs, who are

**4**

wasting taxpayer dollars to support their abusive habits and criminal enterprises.@ She describes the officers as Athugs@ and one of them as Aan abusive, threatening officer with a neo-nazi shaved head and gun.@

Barnes either alleges legitimate explanations for or denies the observations that Sulak contends aroused his suspicions. She and her children were returning from a camping trip. She says that she was driving slowly for safety because of road conditions, traffic density, and wildlife. Although her rear license tag appeared out of date, her registration was current as shown by the sticker on the front windshield. She broke the trunk lock at the campsite to retrieve the car keys after her children locked the keys in the trunk. She denies that she failed to timely activate her turn indicator.

She contends that appellees= conduct following the stop was unjustified. She alleges that Sulak told her he would explain the stop after she provided her license, but then refused to explain until after she provided proof of insurance. His reaction to her refusal to do so caused her to fear that he either was irrational or was not a legitimate law-enforcement officer. She said he used improper language and unnecessary threats when she called 911 and her sister for assistance. She was somewhat reassured when Fisher arrived and began inquiring into the events, but Lock=s arrival led almost immediately to her removal from the car, arrest, and incarceration.

After Barnes was removed from the car, her fearful children locked themselves in her car until her sister arrived. She says they were traumatized by the deputies= actions and the separation from her.

Barnes alleges numerous problems with her treatment at the Williamson County jail, including rough physical and emotional treatment, poor jail conditions (*e.g.*, extremes in temperature and lack of bedding), denial of food, denial of medical care, and denial of legal assistance.

**5**

**Procedural history**

Barnes filed suit on July 20, 1997, two years after the incident. Thirteen months later, she had still not begun discovery. On August 10, 2000, appellees moved for summary judgment on several grounds, including various immunities and Barnes=s inability to muster evidence to support her case. Barnes began requesting discovery, which appellees resisted by objections and motions to quash. Barnes moved to compel discovery and for a continuance of the summary-judgment hearing until she could complete discovery. The court delayed the summary-judgment hearing from its original setting on September 21, 2000 until November 17, 2000, but never ruled on the discovery-related motions. Barnes apparently attempted to file a response to the motion for summary judgment on November 10, 2000, but did not actually file it until November 14, 2000. Appellees moved to strike her response to the motion for summary judgment as untimely.

On January 3, 2001, the court granted both the motion to strike her response and the motion for summary judgment. The court found the lawsuit frivolous and awarded as sanctions attorney=s fees of $19,762.57, with $15,000 remitted if Barnes did not appeal.

Barnes requested findings of fact and conclusions of law, and on February 2, 2001 filed a response to the motion to strike her summary-judgment response and an alternative motion for leave to extend time to file that response. She also requested that the district court set aside or reconsider the final judgment or grant her a new trial. She later filed a notice of late findings and conclusions.

The court neither filed findings and conclusions nor ruled on the remaining motions.

## DISCUSSION

Barnes raises five issues on appeal, many of which have subparts. She complains about the court=s failure to hear or grant her prehearing motions concerning discovery and scheduling. She challenges the court=s granting of the motion to strike her response to the summary judgment and its rendition of the summary judgment. She complains about the court=s failure to hear or grant her postjudgment motions to reconsider and withdraw rulings on motions and the judgment. She also challenges the award of sanctions.

### The prehearing motions

By issue two, Barnes contends that the district court erred by refusing to hear or grant her prehearing motions. She complains that the court improperly refused to hear her motions to compel discovery, to strike appellees= motion for summary judgment, and to abate or continue the summary-judgment hearing, as well as her special exceptions and objections to appellees= summary-judgment evidence. Barnes requested a continuance of the summary-judgment hearing until November 20 or when her discovery was accomplished. Appellees filed written opposition to the continuance and moved to quash her discovery requests. The summary-judgment hearing was continued until November 17, but the court did not compel appellees to comply with her discovery requests and notices.

Appellees argue on appeal that Barnes failed to preserve these issues for appeal by obtaining a ruling on the motions or objecting to the failure to rule. *See* Tex. R. App. P. 33.1(a)(2). An implicit overruling of a request can preserve error. Tex. R. App. P. 33.1(a)(2)(A). The granting of the motion for summary judgment does not necessarily implicitly overrule motions or objections. *See Jones v. Ray Ins. Agency*, 59 S.W.3d 739, 752-53 (Tex. App.CCorpus Christi 2001, no pet.); *Rogers v.*

**7**

*Continental Airlines*, 41 S.W.3d 196, 200 (Tex. App.CHouston [14th Dist.] 2001, no pet.); *Well Solutions, Inc. v. Stafford*, 32 S.W.3d 313, 316 (Tex. App.CSan Antonio 2000, no pet.). *But see Frazier v. Yu*, 987 S.W.2d 607, 610 (Tex. App.CFort Worth 1999, pet. denied). A Mother Hubbard clause in the final judgment denies claims for relief, but does not overrule objections. *See Well Solutions*, 32 S.W.3d at 317. We will analyze each type of objection, motion, or request not ruled upon to see if the summary judgment acted as an implicit overruling of that objection, motion, or request.

### *Motion to compel discovery*

On November 8, 2000, Barnes moved to compel appellees to respond to her discovery requests. She requested disclosure and production of documents on three occasions in September and October 2000; appellees did not disclose or produce the documents. She sent notices of depositions to be taken of four witnesses on October 30 and 31, 2000; appellees neither appeared for the depositions nor rescheduled them.

Appellees instead sought to quash the deposition notices and the accompanying subpoenas duces tecum for Williamson County Judge John Doerfler, Williamson County Sheriff John Maspero, attorney Mike Davis, and assistant county attorney Dale Rye. Appellees contended that the court should stay discovery while considering appellees= motions for summary judgment based on qualified immunity. They objected to the Aapex depositions@ of Doerfler and Maspero, arguing that they were not involved in and had no knowledge of the events; Doerfler was not involved in the arrest and prosecution because he was county judge and Maspero was neither sheriff nor a deputy at the time of the incident. Appellees resisted the subpoenas as requesting too much information that was not relevant or likely to lead to relevant

**8**

information. They argued that the subpoenas served on and depositions of their attorneys Davis and Rye would lead to violations of the attorney-client and work-product privileges. They argued that the subpoenas lacked the proper heading and that the depositions were set on short notice (eleven days) without consulting with opposing counsel.

Appellees also responded to Barnes=s motion to compel discovery. They originally contended that they did not receive the request for disclosure or the first two requests for production, but later asserted that they discovered a receptionist had received but misplaced the requests. They also complained that Barnes failed to confer with them regarding this discovery as required. *See* Tex. R. Civ. P. 191.2. They reiterated their belief that discovery should be stayed until the court determined whether they were entitled to qualified immunity and that the depositions should be put off until Barnes at least attempted less intrusive means of obtaining the information. Appellees also sought a protective order preventing the depositions until the court determined the merits of their plea of qualified immunity.

We conclude that we must consider the merits of the motions. The pleas of immunity did not automatically stay discovery. Texas has not yet adopted the federal rule that a plea of qualified immunity automatically stays discovery of an official claiming immunity. *State v. Sims*, 871 S.W.2d 259, 263 (Tex. App.CAmarillo 1994, orig. proceeding). Further, the federal rule as asserted does not apply because none of the subjects of the deposition notices is an official being sued and claiming immunity. *See id.* at 261. Finally, the rendition of summary judgment without ordering discovery implicitly overruled the motion to compel discovery.

**9**

We review a district court=s rulings on discovery matters under an abuse of discretion standard. *Boon Ins. Agency, Inc. v. American Airlines, Inc.*, 17 S.W.3d 52, 60 (Tex. App.CAustin 2000, pet. denied). A district court abuses its discretion when it acts unreasonably or arbitrarily, or without reference to any guiding principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Boon Ins. Agency*, 17 S.W.3d at 60.

Barnes=s own pleadings support the district court=s failure to compel the depositions of and discovery from Maspero and Davis. Discovery is limited to matters that are not privileged and are relevant to the subject matter of the pending action. Tex. R. Civ. P. 192.3. In challenging the affidavits Maspero and Davis submitted in support of appellees=motion for summary judgment, Barnes asserts that Maspero Ahas absolutely no personal knowledge of anything, any facts, or any of the events in this case, and he was not even the sheriff or involved with the Williamson County Sheriff=s Department in any manner during the relevant time frame of July, 1997. Mike Davis has absolutely no personal knowledge of anything in this case . . . .@ It would be difficult to articulate better reasons to deny discovery. We cannot conclude that the district court abused his discretion by refusing to compel participation in discovery by persons whom the party seeking discovery asserts were uninvolved and uninformed regarding the cause.

Barnes failed to counter appellees=objection to the Aapex@deposition of Doerfler. A party can overcome such an objection by showing that a high-ranking official has unique or superior personal knowledge of discoverable information. *In re Alcatel USA, Inc.*, 11 S.W.3d 173, 176 (Tex. 2000). The party seeking the apex deposition is required to pursue less intrusive means of discovering the information only when that party cannot make the requisite showing concerning unique or superior knowledge. *Id*.

10

Barnes failed to show that Doerfler, as county judge, had unique or superior knowledge about the subject matter of any of her claims. We cannot conclude that the court abused his discretion by denying the motion to compel Doerfler to submit to a deposition.

Nor did Barnes overcome Assistant County Attorney Rye=s assertion of attorney-client privilege. He is not a party and there is nothing in the record to indicate that he has knowledge of matters not protected by the asserted privilege.

The court did not abuse his discretion by implicitly denying the requested discovery.

*Motions to strike, special exceptions, objections*

Barnes sought to have appellees= motion for summary judgment struck because Davis filed the motion before making a formal appearance as lead attorney in the case. She also sought to have the motion struck because of appellees= failure to comply with her discovery requests. She specially excepted to the motion because it did not segregate which bases applied to which defendants in which capacities; she contended that she was entitled to pleadings specifying facts peculiar to each appellee. She also complained that the affidavits were sworn by persons who lacked personal knowledge of the events in question. She complained that appellees= motion for summary judgment contained numerous overly broad, unfounded conclusions of law as statements of fact.

The motion to strike, the special exceptions, and the objections all were part of the response to the motion for summary judgment that the district court struck as untimely filed. We will discuss in greater detail below why that was not error.

We also note that the district court would not have abused his discretion by refusing to strike the appellees=motion for summary judgment for the reason asserted. The motion was signed by Mike Davis more than two months before he gave notice of his appearance and was designated as attorney in charge for the appellees. The designation of an attorney in charge serves primarily to alert the court and other parties who is responsible for the conduct of the lawsuit for that partyC*i.e.*, where documents should be sent, through whom the party should be contacted, and who is authorized to file documents and otherwise represent the party. *See* Tex. R. Civ. P. 8. Davis=s signature on the motion for summary judgment did not subvert those purposes. Eugene Taylor, the county attorney, was listed in the signature block, giving the motion the imprimatur of the designated attorney in charge. Further, Davis was designated the appellees= attorney in charge three weeks before Barnes moved to strike the motion for summary judgment. Although the clearly better practice would have been for Davis to appear and be designated the attorney in charge before he signed a motion on the appellees=behalf, we cannot say that the court abused his discretion by refusing to strike the appellees=motion for summary judgment on this basis.

Nor did the district court err by refusing to strike based on the appellees=noncompliance with discovery requests. Appellees had objections and motions to quash those discovery requests pending up until the granting of the motion for summary judgment. We cannot say that the district court abused his discretion by refusing to strike the motion for failures to comply with discovery requests not found to be binding.

We find no error regarding the treatment of Barnes=s special exceptions and objections to summary-judgment proof; these were struck as part of her late-filed response to the motion for summary

**12**

judgment. As will be discussed below, the district court did not abuse his discretion by striking her response.

*Continuance*

A ruling on a motion for continuance is within the sound discretion of the trial court. *General Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding). Before we will reverse the district court=s ruling, the record must clearly show that the trial court has disregarded the party=s rights. *See Yowell v. Piper Aircraft Corp.*, 703 S.W.2d 630, 635 (Tex. 1986). We may reverse for an abuse of discretion only if, after searching the entire record, we find that the district court=s decision was clearly arbitrary and unreasonable. *See Simon v. York Crane & Rigging Co.*, 739 S.W.2d 793, 795 (Tex. 1987). In deciding whether a trial court abused its discretion in denying a motion for continuance, we examine the following factors: the length of time the case had been on file; the materiality of the discovery sought; and whether the party seeking the continuance had exercised due diligence in attempting to obtain the discovery sought. *Laughlin v. Bergman*, 962 S.W.2d 64, 65-66 (Tex. App.CHouston [1st Dist.] 1997, no pet.).

We initially note that the court did not utterly reject the request for continuance. The summary-judgment motion was initially set for hearing on September 21, 2000. Barnes requested a continuance, and the hearing was reset to November 6, 2000. On October 23, 2000, Barnes requested a further continuance, asserting that she had a six-month-old trial setting for November 6; she requested a continuance until November 20 or until she could conduct depositions. The court held the hearing on November 17. Because the court did not grant the entire period requested and because the discovery did

13

not occur before the hearing, we will examine the *Laughlin* factors to see if the court erred by not further delaying the summary-judgment hearing.

Although some of the requested discovery may have been material to the lawsuit, Barnes=s delay in prosecuting this suit prevents us from finding an abuse of discretion. Barnes filed suit on July 20, 1999Ctwo years after the incidentCand appellees answered on August 20, 1999. When Barnes first sought discovery in September 2000, her suit had been on file for almost fourteen months and appellees= motion for summary judgment had been on file for more than six weeks.[3] In fact, she filed her initial discovery requests almost a month after the original setting for the summary-judgment hearing. Some of the discoveryC*e.g.*, depositions of appellees= attorneysCwas not material to the deputies= actions while arresting her. We find no abuse of discretion in the court=s refusal to delay the summary-judgment hearing beyond November 17, 2000.

We resolve issue two in favor of the judgment.

**Motions relating to the summary judgment**

---

[3] Appellees assert that Barnes=s discovery requests were untimely because she filed them more than 180 days after the answer date, in conflict with Williamson County Civil Local Rule III C.2.(c). (Appellees fail to mention that they filed their motion for summary judgment more than 210 days after the answer date, in violation of Local Rule III C.2.(d).) The local rule=s discovery time limits, however, conflict with the rules of civil procedure. *See* Tex. R. Civ. P. 190. The rules of civil procedure specifically provide that Ano time period provided by these rules may be altered by local rules.@ *Id.* 3a(2). The local rules must give way on both the requests and the motion. Further, appellees waived their assertion that the requests were untimely by failing to obtain a docket-control order and a district-court ruling regarding the timeliness of the discovery requests.

Barnes raises two issues directly relating to the summary judgment. By issue three, she contends that the district court erred by granting the motion for summary judgment. By issue four, she contends that the district court erred by striking her response to the motion for summary judgment. We will consider issue four first because its resolution helps define the scope of materials we can review in considering the merits of the summary judgment.

### *Striking appellant=s response to the motion for summary judgment*

Appellees filed their motion for summary judgment on August 10, 2000. The hearing on the motion for summary judgment was originally set for September 21, 2000, then continued to November 6, 2000, and finally held on November 17, 2000. Barnes=s response was due seven days before the final setting. *See* Tex. R. Civ. P. 166a(c). However, because the Williamson County Courthouse was closed on Friday, November 10, 2000 to observe Veterans= Day, the due date was Monday, November 13, 2000. *See* Tex. R. Civ. P. 4. The response was filed by the district clerk on Tuesday, November 14, 2000, three days before the hearing.

In their motion to strike Barnes=s summary-judgment response, filed November 16, 2000, appellees claimed they did not receive the response until November 15, 2000. Appellees swore that they served their motion to strike on Barnes by certified mail on November 16, 2000. At the November 17 hearing, Barnes asserted that she had not received a copy of the motion to strike. The court granted the motion to strike in his judgment signed January 3, 2001.

Barnes did not file a response to the motion to strike until after the motion for summary judgment was granted when she asked the court to reconsider striking her response in a motion filed

**15**

February 2, 2001. She moved to strike the motion to strike as untimely filed, not served, and not set for hearing. She asserted in this postjudgment response to the motion to strike that her motion was late because the courthouse was closed and because the mail carrier made an error. She asserted that, finding the courthouse and the post office closed on November 10, she placed the motion into the United States mail as permitted by rule. *See* Tex. R. Civ. P. 5.

The record does not support reversing the court=s decision. The response undisputedly was filed late. There was no response to the motion to strike at the time the district court made his decision. The court did not err when he granted the motion to strike.

Even if Barnes had filed a response to the motion to strike in the six weeks between appellees= filing the motion and the district court=s decision to grant the motion, we would find no abuse of discretion in a failure to reinstate the response to the summary-judgment motion. Barnes argues for application of the Amailbox rule@ to render her motion timely filed. That rule applies only if the envelope bears a legible postmark from the United States Postal Service. *See* Tex. R. Civ. P. 5. Placing the document into the hands of other delivery services does not garner the same benefit. *See also Texas Workers= Comp. Comm=n v. Hartford Accident & Indem. Co.*, 952 S.W.2d 949, 952-53 (Tex. App.CCorpus Christi 1997, pet. denied). The evidence attached to Barnes=s post-judgment response to the motion to strike does not compel a finding that she timely placed the response in the United States mail. She states that she did in her affidavit, and there is a letter from a United States Postal Service employee explaining what routing something mailed after 4:30 p.m. in Round Rock would have received en route to

Georgetown and what postmark it would have received. None of this is a postmark, however, and it conflicts with the note attached to the summary-judgment response, which was from a supervisor for the United *Parcel* Service explaining that the motion was not delivered until November 14, 2000 because the label fell off the envelope; the supervisor states that this is an error by UPS, not Barnes. Regardless, this conflict in her evidence and the lack of a timely postmark supports finding that she did not comply with the mailbox rule and that the response cannot be deemed timely filed. *See id.* The district court was not required to consider an untimely filed response, especially absent a timely motion for leave to file a late response. *See* Tex. R. Civ. P. 5, 166a(c); *see also Aparicio v. Morgan*, 868 S.W.2d 16, 18 (Tex. App.CCorpus Christi 1993, no writ). AIt is solely within the discretion of the trial court whether to consider any late-filed answer.@ *See Keever v. Hall & Northway Adver., Inc.*, 727 S.W.2d 704, 705 (Tex. App.CDallas 1987, no writ). We cannot conclude that the court abused his discretion by granting the motion to strike the response. We resolve issue four in favor of the judgment.

**Granting the motion for summary judgment**

Barnes contends that the district court erred by granting the appellees=motion for summary judgment. The court granted the motion without stating a basis. AWhen a trial court=s order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious.@ *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989). The appealing party must negate all grounds on appeal. *State Farm Fire & Cas. Co. v. S.S. & G.W.*, 858 S.W.2d 374, 381 (Tex.1993). We must affirm if the judgment is supported by either the no-evidence or the traditional grounds. *FNFS, Ltd. v. Security State Bank & Trust*, 63 S.W.3d 546,

**17**

548 (Tex. App.CAustin 2001, pet. denied).     Appellees= motion included a no-evidence section.[4] AA

no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla

of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant=s

claim on which the nonmovant would have the burden of proof at trial.@ *Jackson v. Fiesta Mart, Inc.*, 979

S.W.2d 68, 70-71 (Tex. App.CAustin 1998, no pet.).  Aside from her response to the motion for summary

---

[4] Barnes complained at the district court about the adequacy of the no-evidence motion, but those complaints were struck along with her response to the motion.  Some courts have held that appellants may raise lack of specificity of a no-evidence motion for the first time on appeal.  *See* Tex. R. Civ. P. 166a(i); *Cuyler v. Minns*, 60 S.W.3d 209, 213-14 (Tex. App.CHouston [14th Dist.] 2001, pet. denied); *Callaghan Ranch, Ltd. v. Killam*, 53 S.W.3d 1, 3-4 (Tex. App.CSan Antonio 2000, pet. denied); *see also McConnell v. Southside ISD*, 858 S.W.2d 337, 342 (Tex. 1993).  We decline to follow those cases and join other courts who have held that an objection in the district court is required to preserve error. *Walton v. Phillips Petroleum Co.*, 65 S.W.3d 262, 268 (Tex. App.CEl Paso 2001, pet. denied); *Williams v. Bank One, Tex., N.A.*, 15 S.W.3d 110, 117 (Tex. App.CWaco 1999, no pet.); *Roth v. FFP Operating Partners, L.P.*, 994 S.W.2d 190, 194-95 (Tex. App.CAmarillo 1999, pet. denied); *see also* Tex. R. Civ. P. 166a(c) (A[i]ssues not expressly presented to the trial court by written motion, answer, or other response shall not be considered on appeal as grounds for reversal@); Tex. R. App. P. 33.1(a) (preservation of appellate complaints); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex. 1979).

judgment, Barnes brought forth no evidence regarding any of her causes of action; because her response was properly struck, we must affirm the summary judgment on the no-evidence grounds.

Barnes=s inability to muster evidence is not the result of some elaborate procedural Catch-22. Barnes did not obtain all of the discovery she desired. But she waited more than thirteen months after filing the suitCthirty-seven months after the incidentCto begin seeking that discovery. Although the district court did not resolve the subsequent discovery disputes, neither did the court prevent her from filing a timely summary-judgment response supported by evidence other than the disputed discovery. Nor did the court cause her response to be filed late. Barnes waited until the last day to attempt to file her responseCmore than two months after the appellees filed their motion. When the courthouse holiday thwarted that attempt, but extended the deadline, she did not return to the courthouse herself or by representative to file the response the following Monday. Nor did she send the document to the clerk Aby first-class United States mail@ as plainly required to trigger the mailbox rule. *See* Tex. R. Civ. P. 5. Instead she sent the response by a courier not sanctioned by the rules of civil procedure. Even after the appellees filed a motion to strike, she did not immediately file a response to that motion or file a motion for extension of time or for leave to file a late response. Instead, she let the motion to strike her response pend unchallenged for six weeks until the court granted the motions to strike and for summary judgment. Then, Barnes waited thirty more days before filing a response to the motion to strike and an alternative motion for leave for extension of time to file a response. Such tactics belie the urgent tone of Barnes=s pleadings, motions, and briefs. Barnes=s choices to delay seeking discovery and not to respond timely to the motions for summary judgment and to strike

played decisive roles in the circumstances that led the court to strike her response as untimely filed and to her consequent failure to present evidence to defeat the no-evidence motion for summary judgment.

As Barnes did not timely file any evidence, we conclude that the court did not err by granting a no-evidence summary judgment. Because we affirm the judgment on no-evidence grounds, we do not consider whether the appellees= summary-judgment evidence sufficiently supported their traditional motion for summary judgment. We resolve issue three in favor of the judgment.

**Postjudgment motions**

By issue five, Barnes contends that the district court erred by refusing to set and hear her postjudgment motions, depriving her of a meaningful opportunity to be heard or to present evidence. She also contends that the district court erred by failing to grant her motion for new trial.

Barnes does not specify which of her postjudgment motions she contends were ignored, so we will assume that she intends to complain about all of them. Aside from the motion for new trial, her postjudgment motions include a request for findings of fact and conclusions of law, a motion to set aside the final judgment, a motion to reconsider and response to the motion to strike the summary-judgment motion, and an alternative motion for leave to file or extend time to file the response. None of these motions requires a hearing, so we cannot find that the court erred by not setting a hearing on them. Further, findings of fact and conclusions of law are inappropriate following a summary judgment. *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994). As discussed, Barnes deprived herself of an opportunity to present evidence regarding the timeliness of her summary-judgment response by failing to file a motion in the six weeks between when she filed her summary-judgment response late and when the court struck it.

**20**

Nevertheless, there is no indication that the filing of the postjudgment motions and accompanying evidence was not a meaningful opportunity to present evidence.

Similarly, Barnes largely shows no error regarding the court=s failure to grant her motion for new trial. The court filed her motion for new trial including the attachments. There is no requirement that a court hold a hearing on a motion for new trial. None of Barnes=s complaints required a hearing or the consideration of newly discovered evidence. *See* Tex. R. Civ. P. 324. Nevertheless, on April 11, 2001, the court held a hearing on her motion (although appellees= attorney Davis opined that the court lacked plenary jurisdiction at that time). Barnes=s complaints did not require that the motion be granted. In this opinion, we have considered and rejected many of the grounds presented in the motionC*i.e.*, the failure to rule on the motions for continuance and to compel discovery, the striking of the summary-judgment response, and the failure to file findings of fact and conclusions of law. Other grounds are not necessary to the dispositionCfor example, complaints about the appellees= summary-judgment evidence do not require reversal of a no-evidence summary judgment. With the exception of the challenges to the finding that her lawsuit was frivolous and the consequent award of sanctions, we find no error in the refusal to grant the motion for new trial.

We resolve issue five in favor of the judgment, except as it concerns the sanctions award, which we will discuss next.

**Sanctions**

By her first issue, Barnes contends that the district court erred by granting appellees summary judgment on their counterclaim for attorney=s fees. Appellees asserted that Barnes=s suit was

patently frivolous, vexatious, and harassing. They claimed that she had been sanctioned for filing frivolous lawsuits. They claimed that her suit violated Texas Rule of Civil Procedure 13 and unspecified statutes.

A trial court=s imposition of Rule 13 sanctions is within its discretion. *New York Underwriters Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 856 S.W.2d 194, 205 (Tex. App.CDallas 1993, no writ). We set aside that decision only upon a showing of a clear abuse of discretion. *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex. 1989). We determine whether the trial court=s action was arbitrary or unreasonable. *Smithson v. Cessna Aircraft Co.*, 665 S.W.2d 439, 443 (Tex. 1984). In reviewing a trial court=s action in granting or denying sanctions, we ordinarily look to its formal findings of fact and conclusions of law. When a trial court does not make findings of fact and conclusions of law in a bench trial, we infer all necessary fact findings to support the judgment. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984). We uphold the judgment on any applicable theory that finds support in the record. *Seaman v. Seaman*, 425 S.W.2d 339, 341 (Tex. 1968).

Rule 13 authorizes the imposition of sanctions available under Rule 215(2)(b) against an attorney, a represented party, or both, who filed a pleading that is either: (1) groundless and brought in bad faith; or (2) groundless and brought to harass. *See* Tex. R. Civ. P. 13. The purpose of Rule 13 is to check abuses in the pleading process. *New York Underwriters*, 856 S.W.2d at 205; *Home Owners Funding Corp. v. Scheppler*, 815 S.W.2d 884, 889 (Tex. App.CCorpus Christi 1991, no writ). The trial court must find that the pleadings are in fact groundless and brought in bad faith or to harass. *Home Owners*, 815 S.W.2d at 887.

When determining whether Rule 13 sanctions are appropriate, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Id.* at 889. Rule 13 requires sanctions based on the acts or omissions of the represented party or counselCnot merely on the legal merit of the pleading. *See Zarsky v. Zurich Mgmt., Inc.*, 829 S.W.2d 398, 400 (Tex. App.CHouston [14th Dist.] 1992, no writ). Rule 13 requires the trial court to hold an evidentiary hearing to make the necessary factual determinations about the motives and credibility of the person signing the groundless petition. *Home Owners*, 815 S.W.2d at 888-89. Under some circumstances, the trial court may be able to make such a determination by taking judicial notice of items in the case file. *But see Emmons v. Purser*, 973 S.W.2d 696, 701 (Tex. App.CAustin 1998, no pet.). Without hearing evidence on the circumstances surrounding the filing of the pleading and the signer=s credibility and motives, the trial court has no evidence to determine that a party or its attorneys filed the pleading in bad faith or to harass. *New York Underwriters*, 856 S.W.2d at 205.

The no-evidence ground that supports the take-nothing summary judgment against Barnes=s claims does not support this affirmative claim by the appellees. The record must contain pleadings and evidence that support the judgment.

In reversing an award of sanctions based on a very similar record, the Fifth Court of Appeals wrote:

> We assume without deciding, for purposes of this opinion, that the counterclaim for affirmative relief under rule 13 is an available method to bring a motion for sanctions under rule 13. The trial court did not hold an evidentiary hearing to obtain evidence to determine the circumstances surrounding the filing of the pleading and the signer=s credibility and motives. Because rule 13 requires weighing evidence and judging credibility, State Farm=s counterclaim was not ripe for adjudication. *Home Owners*, 815 S.W.2d at 889. The

> summary judgment rule does not provide for trial by deposition or affidavit. We conclude that summary judgment is inappropriate for deciding the motives and credibility of the person signing the alleged groundless petition. We hold the trial court erred in granting Hartford=s motion for summary judgment on State Farm=s counterclaim for relief under rule 13.

*New York Underwriters*, 856 S.W.2d at 205-06. This case is somewhat different from *New York Underwriters* in that here the district court held a hearing on the motion for summary judgment at which appellees could have presented evidence on the sanctions issue.

We find no support in the record for the conclusion that Barnes=s petition is utterly groundless. Rule 13 defines groundless to mean having Ano basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law.@ Tex. R. Civ. P. 13. Despite the inflammatory tone of her pleadings, Barnes asserts causes of action supported by allegations. Appellees= motion for summary judgment relies largely on immunities rather than denials of the allegations; the summary judgment as affirmed relies on her failure to muster evidentiary support in the record for those allegations rather than the absence of a basis in law or fact. As noted above, the appellees= version of the underlying events does not differ greatly from Barnes=s view, although the parties impute different motives and draw different conclusions from those events. We do not conclude that a dispassionate fact finder would have viewed events the same way Barnes does; we conclude only that appellees have not shown that Barnes=s pleadings are without foundation in fact or law. Nor are her pleadings rendered groundless because appellees= asserted immunities might have defeated her causes of action. Appellees= potential immunity from tort liability does not render an assertion that they committed torts groundlessCjust potentially futile.

24

Nor is there support for a finding that Barnes brought the petition in bad faith or to harass appellees. As the Fourteenth Court of Appeals recently observed:

> Bad faith does not exist when a party exercises bad judgment or negligence; Ait is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes.@[*Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 828 (Tex. App.CHouston [14th Dist.] 1998, pet. denied) (quoting *Campos v. Ysleta Gen. Hosp., Inc.*, 879 S.W.2d 67, 71 (Tex. App.CEl Paso 1994, writ denied))]. Courts must presume that papers are filed in good faith, and the party moving for sanctions bears the burden of overcoming this presumption. *See Tarrant County v. Chancey*, 942 S.W.2d 151, 154 (Tex. App.CFort Worth 1997, no pet.).

*Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 896 (Tex. App.CHouston [14th Dist.] 2000, no pet.). The only evidence that obliquely addresses this topic is attorney Davis=s affidavit in which he describes the case as Acomplex@ because of Barnes=s Aconspiracy theories@ and the Abizarre process@ she used. We find no other evidence on this topic attached to the motion for summary judgment or any other pleading, nor was any introduced at the summary-judgment hearing or any other hearing. Appellees point to no such evidence on appeal. We conclude that no evidence in the record shows that Barnes filed this suit to do wrong for a dishonest, discriminatory, or malicious purpose. Nor do we find evidence that Barnes filed the suit to harass appellees. Her pleadings indicate that she seeks redress for wrongs to which she believes appellees subjected her and her children.

On appeal, instead of citing evidence to show that they carried their burden to overcome the presumption of good faith, appellees suggest that the sanctions might be supported on some other statutory basis such as a provision of the federal Civil Rights Act. *See* 42 U.S.C. ' 1988. This assertion is unavailing because appellees did not request attorney=s fees on this basis in the district court and the fees could not

25

have been awarded on this basis; we cannot affirm an award on a basis not asserted or granted in the district court.

We resolve issue one against the judgment.

## CONCLUSION

Our resolution of this appeal turns on what did not happen in the prosecution of the lawsuit rather than on what did or did not occur on the roadside and the jail in July 1997; we express no opinion regarding the truth of Barnes=s allegations or the merits of appellees= asserted immunity therefrom. We affirm the take-nothing judgment against Barnes=s claims. We reverse the award of attorney=s fees as sanctions, and render judgment that appellees take nothing by their request for sanctions.

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed in Part; Reversed and Rendered in Part

Filed:   August 8, 2002

Do Not Publish